### FULLER *vs.* PARRISH.

Parol evidence is admissible in a Court of law to show that a bill of sale absolute on its face was intended as a mortgage.

The mortgagor of a chattel mortgage having upon the day the mortgage debt became due, tendered the amount to the mortgagee, is entitled to the possession of the property mortgaged, and in trover to recover its value; the mortgagee is not entitled to the amount of his debt by way of recoupment or otherwise.

Error to Jackson Circuit.

Trover to recover the value of 144 bushels of wheat.

The facts of the case are stated in the opinion of the Court.

Two questions were argued upon the errors assigned:

1. Whether parol proof is admissible in a Court of law to contradict or vary the terms of an absolute bill of sale.

2. Whether, where the mortgagee of a chattel mortgage had refused to receive the amount secured by the mortgage when due, he could in trover, for the value of the property mortgaged, be allowed the amount of his debt by way of recoupment.

Upon the first point,

*Wood & Livermore,* for plaintiff in error, cited and commented upon the following cases : Chitty on Cont. 99; Ib. 779 ; Saund. Pl. & Ev. 696 ; 3 Campb. 426–57 ; 2 B. & C. 634; Story on Con. 597 (note); 1 Phil. Ev. 547; 3 Stark Ev. 752; 3 Cowp. 47; 1 Greenl. Ev. § 275; 8 Bing. 244; 1 J. R. 414; 3 Ib. 506; 8 Ib. 192–375; 10 Ib. 471; 12 Ib. 427, 490 ; 18 Ib. 45 ; Cro. Eliz. 697 ; 3 Wils. 275 ; 1 Cow. 249; 7 Mass. 518; 11 Ib. 27; 5 Cow. 144, 508; 6 Ib. 266; 9 Ib. 39; 7 Wend. 248; 9 Ib. 227; 12 Ib. 61, 449; 13 Ib. 527; 14 Ib. 26, 195, 671; 14 Ib. 63; 21 Ib. 36; 1 Hill. 607, (opinion of Bronson, J.,); 4 Ib. 587; 5 Ib. 272; 6 Ib. 219; 13 Pick. 121; 5 Ib. 506; 15 Ib. 66; 6 Mass. 435; 5 Ib. 411; 22 Pick. 231: 4 Dall. 340; 5 Pet. 390; 4 Wash. C. C. R. 289; 7 Cranch. 242, 2 Doug. 206.

As to the 2d point: 15 Mass, 389; 2 Caines Cin. E. 202.

*A. Blair*, for defendant in error, cited and commented upon the following cases and authorities, as to the first point: 9 Wend. 232; 14 Ib. 66; 4 Kent Com. 142, and cases cited in note ("a"); 21 Wend. 38; 1 Hill. 606; 1 J. C. 594; 6 Hill. 219; 5 Blackf. 361; 2 Doug. 206.

As to the 2d point: 2 Comst. 286; 3 Hill. 174; 5 Ib. 67; Sedg. on Dam. 461–2–3–4, 479–80.

By the Court, GREEN, P. J.

On the trial of this cause in the Circuit Court, Fuller gave in evidence in defence of the action, a copy of an absolute bill of sale of the wheat in question, executed by Parrish, the plaintiff below, to him, dated the third day of April, A. D. 1852, certified by the Township Clerk of the Township of Liberty, to have been a true copy of a bill of sale, filed in the Clerk's office of said township on the 6th day of April, 1852. The wheat embraced in the bill of sale was the undivided half of two fields, sowed by Parrish, on lands belonging to Fuller, in the preceding autumn. Parrish harvested and threshed the wheat, and delivered to Fuller one-half, being his share of it. Afterwards, and some time in October, 1852, Fuller took into his possession Parrish's portion of the wheat, amounting to one hundred and forty-four bushels, worth seventy-four cents per bushel, by virtue of the bill of sale. The consideration of the bill of sale, was the executing by Fuller, to one Daniel Peck, jointly with Parrish, of a promissory note for fifty-four dollars and fifty-four cents, with interest, payable, by its terms, on the fourteenth day of November then next, and bearing even date with the bill of sale; which note was paid by Fuller to Peck on the seventeenth day of November, the day when it became due; and on the same day Parrish tendered to Fuller the entire amount of the note, including interest, and demanded the wheat; but Fuller declined to receive the money, and refused to give up the wheat. The note was given for the sole benefit of Parrish,

and was signed by Fuller as surety, and the bill of sale was executed by Parrish to Fuller, to secure him against any loss he might sustain by reason of his becoming surety on said note. The fact that the bill of sale was intended by the parties as a mortgage, was shown by the plaintiff below, by parol evidence, which was objected to on the part of the defendant below, as contradictory, or varying the terms of the written bill of sale, but was admitted by the Court, subject to the objection.

It appears from the record, that on the argument in the Circuit Court, it was contended on the part of the defendant below.—

1. That said parol evidence was inadmissible.

2. That if such evidence was admissible, the Court should abate the plaintiff's damages, by deducting therefrom the amount of the said note. The Court held that the parol evidence objected to was admissible, and that the amount of the note ought not to be deducted from the value of the wheat, in determining the amount of the plaintiff's damages, and accordingly rendered judgment for the full value of the wheat, as proven. The defendant below caused exceptions to be filed to the ruling and determining of the Court, and now seeks to reverse the judgment upon the same grounds which he urged in the Court below.

It is conceded on the part of the plaintiff in error, that in a Court of Equity, it would be entirely competent to show by parol proof, that a deed absolute on its face was intended as mortgage, and that *there*, effect would be given to it according to the true intent of the parties. This has been too long and too well settled, and too distinctly recognized by our own Courts, to admit of any question. But it is contended that it is not competent in a Court of law; and why not? So far as the statute of frauds may be supposed to affect the question, that is equally binding upon, and receives the same construction, in a Court of Chancery as in a Court of law;

and so it is with that most familiar and well established rule, that " parol and contemporaneous evidence is inadmissible to contradict or vary the terms of a written instrument." There are certainly some classes of cases, in which Courts, proceeding according to the course of the common law, are incompetent to grant relief. Such are proceedings to enforce the specific performance of contracts, to correct mistakes by acting directly upon and reforming the contract itself, &c. There are cases, peculiarly and exclusively of equity jurisdiction, and so in some cases of fraud, as in proceedings to set aside conveyances as fraudulent, to remove a cloud from the title to land, &c. But fraud is equally cognizable in Courts of law, in all cases wherein such Courts are capable of affording an adequate remedy; and the same remark is applicable in general, to every other subject of equitable jurisdiction in this State, whatever opinions may have once prevailed in England, or in New York, where a separate Court of Chancery existed for many years. Our Courts, under the new Constitution, have been organized with particular reference to the doing away of all unnecessary distinction between the two jurisdictions, and the Legislature is expressly required, as far as practicable, to abolish distinctions between law and equity proceedings. (*Constitution*, *Art.* 6, § 5.) Formerly, a Court of Chancery possessed a very important advantage over a Court of law, in enabling the parties to reach the consciences of each other when a discovery was necessary; and it was only in a Court of Chancery that one party could make a witness of the other. Since the revision of the statutes in 1846, however, either party to a suit or proceeding in a Court of law, may compel the opposite party to testify in his behalf in regard to any facts material to the issue to be tried, which he may be unable to establish by other testimony. (*R. S.*, 461, § 100.)

It would appear very strange, then, if not absolutely absurd, for this Court to say that a Circuit Court can afford no relief

in a case of this character, when sitting as a Court of law, while at the same time it is conceded that it might do so when sitting as a Court of Chancery, and while it is perfectly obvious that the relief would be as ample, and justice as fully administered between the parties, on the law side as on the chancery side of the same Court. It would not certainly be in accordance with the progressive spirit of our jurisprudence, which seeks to administer justice between parties by the most direct and simple methods of procedure that are consistent with that order and regularity which ought to prevail in all judicial proceedings for the safety of all. If then, as it is admitted, parol evidence is admissible in a Court of Chancery to prove that a deed absolute on its face, was intended as a mortgage, such evidence is equally admissible in a Court of law.

It seems hardly necessary, in this view of the case, to examine authorities upon this question. Our statute of frauds, (*R. S., p.* 327, § 10,) provides that "every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels," not accompanied by an immediate delivery, &c., shall be void as against creditors, &c., unless the mortgage, or a true copy thereof, shall be filed in the office of the township clerk of the township, or city clerk of the city where the mortgagor resides. So far, then, as the statute of frauds is concerned, a "conveyance intended to operate as a mortgage," is clearly recognized as good between the parties as a mortgage, and good against all others, if made in good faith and duly filed. Although this precise question has never before been presented to this Court for adjudication, it is understood that the uniform course of decision at the Circuits in this State, has been in accordance with the unquestioned rule in Chancery, that parol evidence is admissible to show that a deed absolute on its face was intended as a mortgage; and it is believed that this is so generally understood throughout the State, that a very large portion of the securities for loans of

money, or for other indebtedness, is given by conveyances absolute on their face, but intended to operate as mortgages.

In the case of Roach *vs.* Cosine, (9 *Wend.* 227,) parol evidence had been received before a Justice of the Peace, in summary proceedings to obtain possession of land, to show that an absolute deed was intended as a mortgage, and the Supreme Court on certiorari held that it was competent, and it does not appear that the contrary doctrine was assumed by the counsel on the part of the plaintiff in error. In Walton *vs.* Cronly's Adm'r, (14 *Wend.* 63,) Sutherland, J., delivering the opinion of the Court, says: "It is not denied by the counsel for the plaintiffs that parol evidence, to show that an absolute deed was intended as a mortgage, was admissible between the original parties to the contract." The same doctrine was held by the Supreme Court in Swart *vs.* Service, (21 *Wend.* 38,) and in Webb *vs.* Rice, (1 *Hill.* 606). Bronson, J. dissenting, and contending that parol evidence was not admissible, in such cases, *in a Court of law.* ( *Vide Hayworth vs. Worthington,* 5 *Blackf.* 361.) The decision of the Supreme Court in the case of Webb *vs.* Rice was reversed in the Court of Errors, (6 *Hill.* 219,) where it seems to have been conceded, so far as can be judged from the opinions given, that the parol evidence of a defeasance would be admissible in a Court of Chancery.

In the case of Meare *vs.* Meare, (*Cowp. p.* 47,) referred to on the part of the plaintiff in error, the action was debt on a bond payable at a certain day. The defendant pleaded that the bond was given as an indemnity to the plaintiff's testator against another bond, and that testator was not demnified. To this plea the plaintiff demurred, and the demurrer was sustained. Before rendering judgment in that case, Lord Mansfield said if the facts set forth in the plea were true, the defendant might move on affidavit for a stay of proceedings, and gave the defendant to understand that if the matter of the plea should be established, he would regard the proceed-

ing as contrary to the agreement between the parties, and would grant a stay as justice should require.

Whether the admission of parol evidence of a defeasance in this class of cases be regarded as an exception to the general rule, or whether it be upon the ground of fraud, as has been suggested, need not be determined. The parol proof seems to vary the *effect* of the written instrument, yet it is not given for the purpose of showing that its language is not precisely what the parties intended. The verbal agreement was that just such an instrument should be made, but that the property conveyed by it should be subject to redemption as in case of a mortgage. The defeasance, however, is left to rest upon the verbal understanding and agreement between the parties. Mortgages, and conveyances intended to operate as mortgages, are generally given by the necessitous to the more opulent, the debtor to the creditor, the borrower to the lender, the suppliant for favor to him who has power to make the terms upon which it shall be granted. The man whose property is about to be sacrificed by a creditor, will not hesitate in regard to the amount of security to be given, nor the manner of giving it, if he can loan the money to satisfy the debt, or otherwise gain time for its payment. He will not hesitate to execute a deed or bill of sale, absolute upon the face of it, but intended to operate as a mortgage, to four times the value of the loan, without insisting upon a written deed of defeasance. To hold that parol evidence is inadmissible to show the intent that the instrument should operate as a mortgage, would enable the selfish and unfeeling creditor or money lender to gratify his avarice, by violating the plainest principles of common honesty with entire impunity. On the other hand, its admission does no injustice to the creditor, but secures to him the full amount which is his due. He loses nothing, but is only prevented from taking that to which in right and justice he has no claim. Admitting that this constitutes an exception to a general rule, based

upon the soundest principles of jurisprudence, what great danger is to be apprehended from it? It has long been familiar to Courts of Equity, at least, and is of as safe and easy application in Courts of law, organized as our Courts now are.

In the case before us, the facts proved independently of the express verbal understanding of the parties, show that the sale of the wheat from Parrish to Fuller, was not intended to be absolute. Fuller placed the instrument on file as a mortgage or a conveyance of goods and chattels, *intended* to operate as a mortgage. When the wheat was ripe, it was harvested and threshed by Parrish, and divided between the parties. *Afterwards*, and some time in October, Fuller took Parrish's portion of the wheat into his possession. These acts, which, so far as appears by the record, were done with the concurrence of both parties, are inconsistent with the assumption of an absolute sale, but entirely consistent with the intention that the conveyance should operate as a mortgage.

It remains to inquire whether the Court erred in refusing to abate from the damages of the plaintiff below, the amount of the Peck note, which had been paid by Fuller, on the day it became due. Parrish, on the *same day*, tendered to Fuller the amount of the note and interest, and demanded the wheat. Parrish had a right to the whole of that day, in which to pay the note, and Fuller's payment of the money to Peck was therefore a voluntary act on his part, and did not operate as a forfeiture of the mortgage; and the tender of the amount by Parrish to him consequently discharged the lien of the mortgage, and entitled Parrish to the possession of the wheat. He might have obtained possession of it, by a writ of replevin, if it could be found and identified, or he might bring trover, to recover its value, which he has done. The lien being discharged by the tender, the indebtedness of Parrish on account of the note, had no longer any

more connection with the wheat, than any other indebtedness from Parrish to Fuller would have. It is, then, neither a case of set-off nor recoupment; and it is difficult to see upon what principle the amount of the note could have been deducted from the value of the property. The man who refuses what is due him, but insists upon what he supposes to be his legal right, against conscience, must take the consequences, if he permits his avarice to overcome his regard for right and justice.

The judgment of the Circuit Court must be affirmed, with costs, to the defendant in error.

MARTIN, J., dissenting.

"The Judges and sages of the law," says Lord Hardwick, "have laid it down that there is but one general rule of evidence, *the best the nature of the case will admit.*" That written evidence is of a better and higher nature than that which rests in memory will not be denied, hence the rule that *oral* proof of that which is written is inadmissible so long as the written evidence exists, or to use the language of the same learned Chancellor, "the law *abhors* the memory of man for evidence of that which is written." From this general rule it would also seem necessarily to follow, that the best evidence when produced cannot be varied or contradicted by that of an inferior nature, for that would involve an absurdity, as that cannot be called the *best* which can be overridden or even qualified by other of a different nature; hence, that other rule equally familiar, that when parties have deliberately put their engagements into writing in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is *conclusively presumed* that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing, and all oral testimony of a previous *colloquium* between the parties, or of conversations or declarations at the time when it was completed or after-

wards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice possibly of one of the parties, is rejected; in other words, parol, cotemporaneous evidence is inadmissible to contradict or vary the terms of a valid, written instrument, (1 *Greenl. Ev.* 275,) and the rule is the same at law and in equity, the only apparent exceptions being in cases where fraud or mistake is charged in the making of the instrument, or resort is had to extraneous evidence for the purpose of construction; but these are only *apparent* exceptions, and, when properly considered, will not be found to conflict with the general rule. Thus the effect of proving fraud, is to show the contract wholly *void*, and to "suffocate the parties' right" to recover upon or enforce it. The terms of the contract are not contradicted or varied by it, but the contract is shown to have had no legal existence. So also in regard to the jurisdiction of the Courts of Chancery in cases of mistake. The rule is not infringed upon by the admission of parol testimony to show the mistake, for in order to sustain a bill for relief under this equity, it is essential that the error be on *both* sides, and that it be admitted by the defendant or distinctly proved, and then the jurisdiction is exercised upon the instrument itself, to re-execute it and correct the error of the parties, and not to construe it. (*Adams Eq.* 170, 171.) And the cases where resort to parol evidence to construe a written instrument is permitted, form no exception to this rule, for this can only be done where from an inspection of the instrument itself, there is apparent uncertainty as to the object and extent of the written engagement, and never where the writing imports completeness upon its face. You cannot make that ambiguous by oral evidence which is in itself unambiguous, and upon such a foundation by further oral evidence contradict or vary its terms. (See the very full note 295 of Cowen & Hill's notes.)

I have thus briefly recurred to general principles, to show

Fuller *vs.* Parrish.

the extent and inflexibility of the rule governing the intro-
duction of oral testimony, where the agreement of the parties
is reduced to writing, in both the Courts of law and of Equi-
ty. The case below was an action of trover for 144 bushels
of wheat. The defendant, in order to defeat the plain-
tiff's action, showed title to the property in question in him-
self, by the introduction in evidence of an absolute bill of
sale from the plaintiff to him of certain property, of which
the subject of the action was part; which bill of sale was full
and complete in all its terms, contained a covenant of war-
ranty, and was under seal. To rebut the case made by the
defendant, the plaintiff below offered oral testimony to show
that the bill of sale was intended as a mortgage, which was
objected to by the defendant's counsel; but the objection
was overruled and the testimony admitted. Was the plaintiff
entitled to this evidence? It would seem as though a refer-
ence to the familiar principles to which I have adverted, with
a moment's consideration of the nature of the jurisdiction of
a Court of law in civil cases, and of the remedy it affords to
suitors, would furnish a negative answer to this question,
without further discussion.

This jurisdiction is in no case exercised to compel the spe-
cific performance of a contract, unless, indeed, the enforce-
ment of money contracts may be considered such, but is ex-
hausted—fully exercised by affording a remedy which com-
pensates by damages. Hence the inquiry in actions *ex con-
tractu* is into the contract and the breach, and in those *ex
delicto* into the right or title and the wrong, and in both
into the consequent damages. The common law recognizes
no right to compel the re-execution of a contract, or the cor-
rection of an error, and the enforcement of such re-executed
or corrected agreement, much less can it reform a deed or
other absolute conveyance, and afford relief by damages or
otherwise upon such reformed instrument. It must grant or
withhold its remedies upon the evidence submitted to it, to

show the plaintiff's or defendant's right, and if that evidence be written, the rules I have above stated must govern, except in the one case where fraud is alleged and proved, and then it can only withhold its remedy. If fraud vitiates all contracts, " and suffocates the right," this is the necessary consequence, for by showing a fraud, you establish the fact that no valid contract was made. If there was any question of this, a consideration of the rules governing pleadings in Courts of law, would of itself sufficiently establish it.

Now the plaintiff's action can only be contested under a dilatory, or peremptory plea; a reformatory plea is unknown. When, therefore, the real instrument made is declared upon, the defendant can only meet it by a plea showing that the plaintiff cannot then, or in that form of action recover, or by a plea showing that the plaintiff never had a right of action upon it, or that such right is extinguished, and when such instrument is admitted in evidence, the sole question is, what are the parties' rights and obligations under it, and all evidence is excluded which has for its object its reformation and a corresponding remedy. Now the notice of the plaintiff in this case; in reply to that of the defendant, alleges no fraud; it simply avers that the bill of sale was given to indemnify the defendant against loss, &c. Does this notice impeach the bill of sale, or show that the defendant had no right to the property under it? Had a demurrer to this been interposed I can have no doubt but that the notice would have been held bad, not because of its insufficiency, which is very apparent, but because it was no reply in law to the matters set up in the notice of the defendant, it neither averring the bill of sale to be fraudulent and void, nor alleging any reason why it was not presently available. I hear of no pleading which will lay the foundation for the right in either party to inquire *dehors* the instrument for the original intention of the parties to it, respecting its subject matter, except for the purpose of avoiding it altogether, and this can only be done under an

allegation of fraud, and if it be true that the rights of parties are determined upon the issue made by the pleadings, it follows that if no issue of this kind can be made, no such right of inquiry into the intention of the parties to the instrument by proof *aliunde* exists at the common law.  That the testimony offered was incompetent, is established, also, by the uniform decision of the English Courts, and of those of every State of this Union which proceed after the course of the common law, with perhaps a single exception.

We have been referred to cases decided in New York, and to one in Indiana, as maintaining the contrary doctrine, and those I propose now to examine.  In New York, the rule for which I contend was for a long time recognized, until in Roach *vs.* Cosine, 9 Wend. 232, it was overturned.  The opinion in Roach *vs.* Cosine, was an unsound one, and is not sustained in the cases cited upon the argument.  These are 2 Conn. 324, and 3 Wend. 208.  In the former case a deed, absolute on its face, *was accompanied by a written defeasance;* and the question was rather of the construction of the registry laws, and not at all of the effect of *oral* evidence, while the other was a case in equity.  The next case in which the question arose, is Walton *vs.* Cronly's Adm'r, 14 Wend. 66, where that of Roach *vs.* Cosine seems to have been followed without particular discussion or consideration; and it would seem that this doctrine crept into the common law Courts of that State by carelessness and concession, rather than upon research and deliberation; and we accordingly find the Courts, from this decision on, until its doctrine was finally overthrown, eager to be rid of its effects, even while compelled to recognize it.  Thus, in Swart *vs.* Service, 21 Wend. 36, the principle established in Roach *vs.* Cosine, was followed by the majority of the Court; but if I may use the expression, *under protest;* for Cowen, J., in delivering the opinion in that case, says: " It has often been held in the Courts of Equity of this State, that a deed, though absolute

on its face, may, by parol evidence, be shown to have been in fact a mortgage, in the terms offered here; and the same doctrine was held by this Court in Roach *vs.* Cosine, and Walton *vs.* Cronly's Adm'r, equally applicable to a Court of law, and has, *it seems*, ceased to be the subject of contest; for no objection to the doctrine is now made. For one, I was always at a loss to see on what principle the doctrine could be rested, either at law or in equity, unless fraud or mistake were shown in obtaining an absolute deed, when it should have been a mortgage. In either case the deed might be rectified in equity, and *perhaps*, even at law in this State, where mortgages stand much on the same footing in both Courts. Short of that, the evidence is a direct contradiction of the deed, and I am not aware that it has ever been allowed in any other Courts of equity or law. But with us, the doctrine is settled, and I am not disposed to examine its foundations, at least without the advantage of discussion." From this reluctant recognition of the doctrine of Roach *vs.* Cosine, *Bronson, J.,* dissented. "Where," says he, "the transaction was intended as a mortgage, and through fraud or mistake, the conveyance has been made absolute in its terms, a Court of Equity, acting upon well established principles, can reform the deed. But this will only be done on a direct and appropriate proceeding for that purpose, and after such ample notice to all parties in interest, as will tend most effectually to guard against surprise, fraud, and false swearing." He further contends that "a Court of law has neither power nor process to reform a deed. If parol evidence to contradict or insert a condition in the conveyance can be received at all, it must of necessity be in a collateral proceeding, and must be received whenever either party choose to offer it." And he incontrovertibly shows the inability of Courts of law to protect *bona fide* purchasers or even parties, and the innumerable mischiefs which will flow from the assumption of this jurisdiction by them. This

doctrine of Roach *vs.* Cosine was again recognized in Webb *vs.* Rice, 1 Hill, 606, by the majority of the Court, but without a written opinion, while *Bronson, J.,* again dissented, and this case was carried to the Court of Errors, and there reversed, (see 6 Hill, 219,) and the doctrine for which I am contending, established; and it has ever since been recognized as the law in that State. See Taylor *vs.* Baldwin, 10 Barb. 582.

Intermediate the decision of Webb *vs.* Rice in the Supreme Court, and its review and reversal in the Court of Errors, a similar question was before the Supreme Court in Nelson *vs.* Sharp, (4 *Hill.* 584,) in which the Court again expresses the reluctance with which the case of Roach *vs.* Cosine was followed. " I was reminded," says Cowen, J., " of the *anomalous practice of this State* of receiving parol evidence that an absolute deed was intended as a mortgage. This, too, is an *exception* which should not be extended. There is difficulty enough in its standing alone." And thus we find in looking through the decisions of the Courts of New York, where the doctrine contended for by the plaintiff in error was first stated, and where it might be hoped it had died, that the well settled rule of the common law was first recognized, then departed from and again restored, and I think I am warranted in saying that such restoration followed from the reluctant assent of the Court in every case after Walton *vs.* Cronly to the doctrine of Roach *vs.* Cosine, and its repeated and uniform denial that that doctrine was sound law.

The only other case at law to which we are referred is that of Hayworth *vs.* Worthington, (5 *Blackf.* 361,) which I admit directly holds that parol evidence is admissible to prove that a bill of sale of goods absolute on its face, was intended by the parties to be only a mortgage, but in this case, as in that of Roach *vs.* Cosine, the Court contents itself with announcing the rule without any discussion of its reasons, and refers to and bases it upon former adjudications of the same Court

and of those of other States, *every one of which*, excepting the case of Walton *vs.* Cronly, (to which I have already referred,) are cases in Chancery. If, then, we hold that this evidence is admissible in this case, we can only sustain ourselves by reference to the exploded doctrines once held by the Courts of New York, for I think I hazard nothing in saying that no Court of common law jurisdiction in the Union holds so at the present time. This question has never, to my knowledge, been directly before this Court, but the principle for which I contend was distinctly recognized in Atwood *vs.* Gillett, (2 *Doug.* 206,) where the Court says, "When parol proof is offered to show that the written contract is void or not of binding force, it is admissible, but if the object be to prove that it was intended to mean something different from what its language imports, it is inadmissible."

In arriving at my conclusion on this question, I am not unmindful of the fact that Parsons, in his learned and valuable treatise on contracts, in note "y," page 452, asserts that "although the bill of sale is absolute, and no writing in defeasance is given back, parol testimony is still admissible to prove that it was intended only as collateral security," and refers to Reed *vs.* Jewett, 5 Greenl. 96; Carter *vs.* Burriss, 10 S. & M. 527, and Freeman *vs.* Baldwin, 13 Ala. 246, as sustaining this proposition, and to Whitaker *vs.* Sumner, 20 Pick. 308, and Montany *vs.* Rock, 10 Missouri, 506, as holding the contrary doctrine. That the proposition is too broadly stated even as to equity jurisdiction, I cannot doubt, and shall presently attempt to show, although I admit that in this country the authorities are conflicting, but that such is the rule of law, cannot be maintained even from the authorities which he cites. Now Carter *vs.* Burriss and Freeman *vs.* Baldwin are both cases in equity, while Reed *vs.* Jewett is a case at law, and one where both parties had, *without objection*, shown the bill of sale conditional, and insisted upon their rights under it as a conditional sale, and the Court recognized

the contract to be as both parties had insisted it was, and determined their rights accordingly, and this is the whole of that case. That it is not regarded in the same Court as determining the question now before us, is, I think, apparent from the subsequent case of McClelland *vs.* The Cumberland Bank, (11 *Shep.* 566,) where parol proof being offered to explain a written instrument, it was excluded, the Court saying, "Whatever may have been the previous conversations between the parties or even their understandings of what was agreed upon between them, or of the bystanders who might be present at the negotiation, yet if the parties finally proceeded deliberately and fairly to put their agreement in writing, nothing is better understood than that the writing is conclusive upon them, and that all previous conversations and understandings in reference to the subject are inadmissible to control the import of the writing. The case of Whittaker *vs.* Sumner is directly in point. That was *trover* for certain goods. The maker of a promissory note delivered a quantity of merchandise, together with a receipted bill of parcels, in the usual form, to the holder, by whom the merchandize was to be retained till the note should be paid. The bill of sale was absolute in the ordinary form of a bill of parcels, to the amount of $2,000 48, and receipt of payment is acknowledged. Chief Justice Shaw says, "it is in proof that this was not intended as a sale, but as collateral security for the payment of a promissory note for $1000, payable in sixty days. Clearly it was not a mortgage. It contained no condition, no defeasance, *nor can one be engrafted upon it by parol proof.*" My limits will not permit a reference to all the cases maintaining this doctrine. A glance at the U. S. Digest will show that our reports are full of them, and I will only refer, in concluding this branch of inquiry, to that of Taylor *vs.* Riggs, (1 *Pet.* 598.) This was an action at law upon a lost instrument, and in discussing the evidence offered to prove its contents and its effect, Chief Justice Marshall says:

" *This not being an action for deceit and imposition, but on a written contract,* the right of a party to recover is measured precisely by that contract, and the secondary evidence must prove it as laid in the declaration. The conversation which preceded the agreement forms no part of it, nor are the propositions or representations which were made at the time, but not introduced into the written contract, to be taken into view in construing the instrument itself. *Had the written paper been produced, neither party could have been permitted to show his inducements to make it, or to substitute his understanding of it, for the agreement itself.* If he was drawn into it by misrepresentation, that circumstance might furnish him with *a different action, but cannot affect this.*"

Under ordinary circumstances, I should deem it unnecessary to add anything to what has been already adduced—but it having been urged that our Courts of law may well assume equitable jurisdiction in this class of cases, I propose to examine the case further, to show that it is at least questionable, whether the plaintiff in error could have any relief in either Court, if not absolutely certain that he could not.

Now, if the rule first stated be correct, and the view taken of its force and effect in Courts of Equity as well as law be also correct, it is difficult to see how the testimony could be received in either Court, to affect or qualify the bill of sale, or if received, how it could tend to any such result. There is no evidence tending to show fraud or mistake in the drawing and executing of the bill of sale, nor is it ambiguous or incomplete, so as to require or admit of explanation. As a general proposition in Equity, and an universal one at law, the fraud which will avoid a contract, or authorize the interposition of the Court, must have entered into the original transaction, and not have been of subsequent origin. It is true that it has been held in Equity, that if a grantee *fraudulently* attempts to convert into an absolute sale that which was originally intended to be a security for a loan, the origi-

nal design of the conveyance, though contrary to the terms of the writing, may be shown by parol, (*Morris* vs. *Nixon*, 1 *How. U. S. R.* 118,) but I apprehend such attempt to be deemed fraudulent, must be attended by some special circumstances and not stand alone—or the parties must occupy some confidential relation to each other which raises a peculiar equity, and thus furnishes an exception to the general rule. In Thomas *vs.* McCormick, (9 *Dana*, 108,) the contrary was held, and that parol testimony to show that a deed in terms, an absolute conveyance, was not intended as such, but was designed as a mortgage, or other conditional conveyance, is not admissible at law, nor can it be admitted in Chancery, unless there is an allegation, and some proof that there was fraud or mistake in *the execution* of the deed, or some vice in the consideration. And this appears to be the established doctrines of the English Courts, and the prevalent doctrines in those of this country, and it is in my judgment both the sounder and safer doctrine. See 3 Gill. 344, Ib. 547, and the cases in U. S. Dig., and the views of Cowen and Bronson, JJ., already quoted. Certain it is that the contrary doctrine had not been entertained without doubt, and the question is one upon which Courts conflict in opinion, nor do I see how the doctrine can be successfully vindicated if attacked. In this State, the question has never been distinctly determined, but in Sutherland *vs.* Crane, ( *Walker Ch. Rep.* 523,) the Court recognizes the rule to be that " parol evidence cannot be received to add to, or vary the terms of a written instrument. It may be introduced for the purpose of showing fraud or mistake in drawing the instrument, when the fraud or mistake is set forth in the bill, and the relief asked is based upon it, but not otherwise," and the Court dissolved the injunction granted upon the bill, upon the ground that no mistake was charged to have been made in drawing the instrument, nor that the instrument was drawn contrary to the intention of the complainant respecting it " in consequence of any

fraudulent representations of the defendant," and this is the true and equitable rule. Parties must be held responsible for their deliberate acts, whether in reducing agreements to writing or otherwise, and no case can be supposed where there is an absence of fraud, or mistake in the original drawing of the instrument which is not attributable to carelessness or indifference, or a voluntary misplaced confidence. For such voluntary act, the actor alone must answer, and it is not sound law, nor good policy, that equity should relieve against it, when no improper act or design can be attributed to the other party. If the latter seeks to enforce the instrument as it is written, he does no more than the party empowered him to do, and it is better that he should bear the consequences, and rest where he intended to place himself, upon the honor or good faith of the other party, rather than that Courts should relieve him from the consequences of his own folly, at the sacrifice of a well established rule of evidence, as well as a fundamental one of contracts.

But however this may be in the present case, if there was anything indicating fraud, it could only be the attempt to insist upon the strict terms of the bill of sale; and if that can be held fraudulent it is certainly not the instrument which is so held, but the design respecting it, upon which the instrument cannot be held void, and consequently no ground upon which a court of law could withhold a remedy or otherwise relieve a party. Nor does there appear to have been any mistake or surprise in its draft or execution. Whatever may have been the expectation of Parrish, as to the operation of the instrument, it appears to have been just such an one as he intended to sign, and for aught that appears, one of his own drawing. If the mistake, if there was one, was only as to the legal consequences of the instrument, even Chancery could not relieve against it, for as already stated, in order to sustain a bill for relief under this equity, the mistake must be on both sides, for if it be by one party only, the altered

instrument is still not the real agreement of both. It is not sufficient that there is a mistake as to the legal consequences of the instrument, for to admit correction on this ground would be indirectly to construe by extrinsic evidence, and the proper question is not what the document was intended to mean, or how it was intended to operate, but what was it intended to be. Thus it is held that when a party making a voluntary deed supposes that he will have a power of subsequent revocation, though no such power is reserved, the deed cannot afterwards be altered to give him the power, for the evidence is not that its insertion was prevented by mistake, but that it was never intended to be made. (*Adams Eq.* 170; *Graham* vs. *Child,* 1 *B. C. C.* 92; *Townsend* vs. *Stangroom,* 6 *Vesey,* 328; *Warrall* vs. *Jacob,* 3 *Meriv.* 256, 271; *Hunt* vs. *Rhodes' Adm'r,* 1 *Pet.* 1.) The true rule, then, in equity, requires the enforcement of the contract really made, regardless of the intention or supposition of either party, respecting its effect and operation, unless fraud or mistake have intervened in its creation. "The rule," says Mr. Spence, (1 *Eq. Juris.* 556,) " excludes from the consideration of the Court every question but this: *What is the meaning of the words which the parties used?* The question is not broadly, what was the *intention* of the parties; what the meaning of the words indicate, must be taken to have been the intention." (1 *Greenl. Ev.* § 277; *Chit. on Cont.* 99; 2 *Barb. S. C. R.* 28.) A full examination of the authorities, and a consideration of the question upon principle, impels me to the conclusion that parol evidence is admissible in equity to show that an absolute deed was intended as a mortgage, and that the defeasance has been omitted or destroyed, by fraud, surprise or mistake, (4 *Kent's Com.* 143,) and not otherwise; and that while courts of law and equity have concurrent jurisdiction in cases of fraud, to inquire after it by evidence *dehors* the instrument, yet that a court of law, from its very constitution, is limited in its

powers, and can only refuse to enforce a contract or establish a right found fraudulent, while chancery can go further, and reform the contract or determine the right, as shall be equitable; but I am not aware that over cases of *mistake* a court of law has ever assumed jurisdiction, nor do I see how it can. In the case before us, there is no evidence or offer of proof to show ignorance of fact, or an agreement for any particular instrument which was omitted to be made, by mistake or fraud.

For any thing that appears, the parties executed the very instrument they intended to execute, and its legal effect is conclusively presumed to have been known to them. By holding this sale to be conditional, it may be that we should force upon the parties a contract they had never made, and which was never intended to be made, and this upon no sound equitable ground, for it cannot be upon that of fraud or mistake. Upon what principle can a *court of law* assume to exercise any jurisdiction of an equitable nature, when the right to relief in chancery does not exist, or is even doubtful?

But it is said that under our present Constitution, the organization of our Courts is such, that courts of law may, in cases like the present, assume equity powers, and grant the relief which equity would afford. But, assuming that this is a case in which equity would interfere, I confess I cannot understand this argument. The equity jurisdiction of our Courts is as distinctly preserved and administered now as it ever was, and the common law is recognized as a part of the law of the land, and as distinctly administered, and its purity as carefully preserved, as though an independent Court of Chancery still existed. It is a strange doctrine, that because the Circuit Judge who to-day administers the common law, may to-morrow preside in chancery, it therefore follows that the barriers between these jurisdictions are necessarily broken down, or may be overleaped. It is true that the Legislature is authorized to abolish, as far as practi-

cable, the distinction between law and equity; but until this is done in a proper manner, that distinction exists, and it is difficult to perceive how Courts can assume legislative power, and by judicial decisions upon cases as they arise, abolish such distinction.

The confusion as well as danger that would result from such a course, should deter Courts from pursuing it, even if there were no obligations resting upon them to administer the law as it exists. If this power be assumed, where is it to end, or where would be the security to the citizen in his rights or property? The result would be interminable confusion and utter insecurity. I can neither concede that such power has been assumed in the several Circuit Courts in any class of cases, nor that it is right or proper that it should be exercised until the Legislature shall have abolished the distinction between law and equity, and furnished the proper machinery by which the rights and remedies of parties may be understood and enforced.