DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.

---

## SMITH v. TABER.

1. FRAUD—PURCHASE OF RESORT BUSINESS—FAILURE OF PROOF.
   Record presented in plaintiff schoolteacher's suit to rescind contract for purchase of resort business *held*, insufficient to entitle plaintiff to relief prayed, where it appears he had examined the property several times before consummating the purchase, and never sought to verify alleged exaggerated claims as to amount of business done by examining books and records, there being a failure of proof of the falsity of material representations made to him by defendant owners and their real-estate agents upon which he was entitled to rely.

2. SAME—ACTIONABLE FRAUD—EVIDENCE.
   Actionable fraud may be shown by proof with a reasonable degree of certainty that defendant made a material representation that was false, knowingly or recklessly, with the intention that plaintiff rely upon it, and that the plaintiff did rely upon it to his injury.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 24 Am Jur, Fraud and Deceit § 285.

Appeal from Genesee; Gadola (Paul V.), J. Submitted October 11, 1960. (Docket No. 50, Calendar No. 48,380.) Decided March 1, 1961.

Bill by Edgar K. Smith against Clarence E. Taber, Josephine Taber, and Floyd Kent, Inc., a Michigan corporation, for rescission of contact to purchase resort property. Bill dismissed. Plaintiff appeals. Affirmed.

*Rene J. Ortlieb* (*William O. Kelly, Jr.,* of counsel), for plaintiff.

*Maurine L. Jones,* for defendants Taber.

*David C. Pence,* for defendant Floyd Kent, Inc.

SOURIS, J. Plaintiff, a schoolteacher, purchased a summer resort business from defendants in 1957 for $23,000. He paid $3,000 of the purchase price in cash and executed a land contract calling for the payment of the balance in monthly instalments with 6% interest. Having operated the resort business during the 1957 season with unsatisfactory results, he instituted this suit for rescission, claiming that he was induced to purchase the business by the defendants' false representations. The chancellor denied plaintiff the relief he requested.

The defendants denied they made any material misrepresentations to plaintiff, and they also claimed as a defense to the rescission action that plaintiff had affirmed the transaction by his conduct subsequent to his discovery of all of the matters about which complaint is made, thereby forsaking any right he might have had to rescind. A careful review of the entire record in this matter compels us to affirm the chancellor's decree on the ground that plaintiff failed to prove that any of the ma-

terial representations made to him, upon which he was entitled to rely, were in fact false.

Plaintiff claimed that the premises were not in as good condition as they were represented to him. For example, he testified that the flooring in the house on the property was in such bad condition that a bed went right through the floor, that the house was not properly on its foundation, and that the wiring was defective. Plaintiff also claimed that an open drain alongside the property created an extremely hazardous health condition and that water flowed through it from abutting property with such force that it constantly washed his land into the adjoining lake. He testified that he had been told that the drain was the responsibility of the county and that a lawyer had been retained to have the county repair the condition referred to, but that the county denied responsibility therefor. Much of his testimony was to the effect that the physical plant was in poor condition, but no reason appears from the record why this discovery was not made prior to consummation of the purchase, plaintiff having examined the property on several occasions before submitting his offer to purchase.

Plaintiff also claimed that prior to consummation of the purchase, he was told by defendants or their real-estate agents that the resort was a good, profitable, money-making business. He was told at various times that it was worth $30,000 and $45,000 and would soon be worth $90,000. He claimed that he was told that the income from rowboat rentals was $2,000 per year; that a concession stand earned $2,500 per year; that there was annual income from the sale of bait of $200; that the 3 cabins on the property were regularly rented, providing additional income of $900 per year; and that there was a demand for groceries and tackle which would be profitable. He claimed that he was also told the annual

income was $6,000 and that if the business were operated in the winter it had a potential income of $10,000. As noted above, plaintiff's operation of the resort during the summer season in 1957 was unprofitable. Indeed, he found very little call for rental of the cabins, there was no bait business to speak of, he couldn't sell any of the groceries or tackle which he purchased from the defendants and his over-all profits were practically nonexistent.

At no time prior to consummation of the purchase did plaintiff examine defendants' books and records for the resort business. He testified that he requested them but that he was not shown any of such records. He claims to have relied entirely upon the representations outlined above without verifying, or even attempting to verify, any of them by insisting upon an examination of defendants' financial records. The fact of the matter is that there was an almost complete failure of proofs at the trial with reference to defendants' actual earnings during the time they operated the resort business and so it would have been impossible for the chancellor, and it is impossible for us, to say that the representations plaintiff claims to have been made with reference to the resort's earnings were or were not false. The only evidence relating thereto consisted of some records of 1955 operations, but they were insufficient to support a finding of fraud. In 1956 the resort had been purchased from defendants by a Mr. Snider who surrendered possession at the end of the year and forfeited a substantial portion of his down payment. He testified he operated unprofitably. It seems quite apparent that defendants exaggerated the value of the property and its profit potential, but without proof of the falsity of material representations upon which plaintiff was entitled to rely, we cannot grant rescission.

Plaintiff's action for rescission is based upon a claim that he was induced to enter into the contract of purchase by defendants' actionable fraud. As this Court said in *Candler* v. *Heigho,* 208 Mich 115, 121, quoting from 20 Cyc 13:

" 'The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any 1 of them is fatal to a recovery.' "

See, also, *Columbus Pipe & Equipment Co.* v. *Sefansky,* 352 Mich 539. Our decision of affirmance is based upon the fact that plaintiff's proofs failed to establish the falsity of any of the material representations made to him by defendants upon which he was entitled to rely.

Affirmed. Costs to defendants.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and KAVANAGH, JJ., concurred.