### WHEELER *v.* MARTIN.

1. FRAUD—RESCISSION—VALUE OF LUMBER INVENTORY.
    Seller's representation that lumber inventory was worth $17,000 *held,* not actionable fraud as a basis for rescission of the purchase of lumber business, where plaintiffs' sales had totaled $5,800, $8,000 more was realized at forced sale and plaintiffs had added only $1,100 to the inventory, since they received at least as much in value as the $12,000 they had agreed to pay and plaintiff husband, a carpenter, had spent 3 half days examining and counting the lumber with benefit of a written inventory.

2. SAME—RESCISSION—KILN-DRIED LUMBER.
    Representation that lumber had·been kiln dried *held,* not actionable fraud as a basis for rescission of purchase of lumber, where plaintiff husband, a carpenter, knew good lumber when he saw it and had spent 3 half days examining and counting the lumber.

3. SAME—RESCISSION—ROOF OF LUMBER SHED.
    Fact that roof of lumber shed was represented as in good condition was not a misrepresentation constituting actionable fraud affording a basis for rescission of the purchase of lumber business, where plaintiff husband spent 3 half days examining and counting the lumber and had an opportunity to determine the condition of the tarred roof.

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2]   46 Am Jur, Sales § 772 *et seq.*
[2, 3]   23 Am Jur, Fraud and Deceit § 54.
[4]   23 Am Jur, Fraud and Deceit § 23 *et seq.*
[5]   37 Am Jur, Mortgages § 535 *et seq.*

4. SAME—RESCISSION—AMOUNT OF BUSINESS DONE BY LUMBER YARD.
   Statement by seller of lumber yard that "it was nothing for a
   great number of people to be waiting to be waited on at the"
   yard *held*, not such a representation as to be relied upon nor
   to constitute actionable fraud upon which to base rescission.

5. MORTGAGES—LAND CONTRACT—FORECLOSURE.
   Foreclosure of land contract and real-estate mortgage for total
   of $12,000 and given by purchasers of lumber business *held*,
   to have been properly ordered on defendants' cross bill, where
   plaintiffs who had agreed to pay $12,000 also for the inventory
   had paid a total of only $2,700 on chattel mortgage in course
   of 14-month period after deal was consummated.

Appeal from Sanilac; Bach (Arthur M.), J. Submitted June 9, 1961. (Docket No. 47, Calendar No. 48,738.) Decided September 21, 1961.

Bill by Ellery Wheeler and Florence Wheeler against Jule L. Martin and Laura L. Martin for rescission of purchase of lumber yard and cancellation of mortgage given as part payment therefor. Cross bill for foreclosure of mortgage and land contract. Decree of foreclosure for defendants. Plaintiffs appeal. Affirmed.

*Raymond H. Benedict,* for plaintiffs.

*Atkins & Drillock,* for defendants.

PER CURIAM. Plaintiffs, husband and wife, appeal from dismissal of their bill for rescission of their purchase of defendants' lumber yard business and from decree on cross bill foreclosing a mortgage and land contract executed by plaintiffs. Plaintiffs claim they were induced to enter into the transaction with defendants by fraudulent representations made by defendants and their real-estate agent.

In March of 1958, in response to a newspaper ad, plaintiffs offered defendants $12,000 for their lum-

ber yard business, including the real estate, and
$12,000 for its inventory. The fraudulent repre-
sentations upon which plaintiffs rely in support of
their bill for rescission are that there was an inven-
tory worth $17,000 in the business at the time of its
purchase by plaintiffs; that the lumber was kiln
dried; that the roof of the lumber shed was in good
condition and that the lumber yard did a good
business.

None of the representations claimed to have been
made, under the facts of this case, constitutes action-
able fraud. Mr. Wheeler had been a carpenter and
acknowledged at trial that he knew good lumber when
he saw it. Before purchase he spent 3 half days
examining the premises and counting the lumber,
during which time he had the benefit of a written
inventory. From such opportunity to examine what
he sought to purchase, he should have been able to
determine the value of the lumber and whether it
was kiln dried, and he could have determined the
condition of the tarred roof, if not from the roof
itself, from the open and unplastered ceiling below
it. In any event, as to the inventory alone, during
plaintiffs' operation of the business, their sales
totaled $5,800 and an additional $8,000 was realized
at forced sale. Considering the fact that plaintiffs
added only $1,100 to the value of inventory during
their operation of the business and that they paid
$12,000 for the inventory purchased from defend-
ants, we conclude plaintiffs received at least as much
in value as they agreed to pay. The remaining
representation claimed to be fraudulent relates to
the business done by the lumber yard before its pur-
chase by plaintiffs. In plaintiffs' counsel's words,
it was: "That it was nothing for a great number
of people to be waiting to be waited on at the Martin
lumber yard." Such a statement, even if character-
ized as a representation, is hardly worthy of reli-

ance and under no circumstances could we base rescission thereon.

From our examination of the evidence produced by plaintiffs, we cannot say that the falsity of the representations made was proved, nor can we say that plaintiffs were entitled to rely thereon, plaintiffs having themselves examined the premises and the inventory with reference to which the representations were made. *Smith* v. *Taber,* 362 Mich 619, and *Candler* v. *Heigho,* 208 Mich 115, 121.

We likewise affirm the chancellor's decree of foreclosure entered on defendants' cross bill. The transaction involved in this case was consummated by plaintiffs' purchase of the real estate for $12,000 and of the personal property, including the inventory, for an additional $12,000. Purchase of the inventory was effected by plaintiffs' execution of a chattel mortgage in the full amount of the purchase price, no cash or other payment having been made. The real estate was purchased on land contract in the amount of $12,000, a promissory note in the amount of $10,000 being recited therein as down payment, the balance of $2,000 being required to be paid within a period of 6 years. The promissory note by which plaintiffs made down payment on the real estate was in turn secured by a mortgage upon real estate plaintiffs owned in the village of Peck. It is the land contract on the lumber yard and the mortgage on the Peck real estate sought by defendants' cross bill to be foreclosed.

The fact is that plaintiffs at no time subsequent to purchase made any payments, either on the land contract or on the mortgage. Indeed, from the time of this transaction in March of 1958 until May of 1959, only $2,700 had been paid by them, all of which was paid on the chattel mortgage covering the inventory. Under the circumstances, the chancellor

had no choice but to order foreclosure of the land contract and real-estate mortgage.

Affirmed. Costs to defendants.

DETHMERS, C. J., and CARR, KELLY, TALBOT SMITH, BLACK, EDWARDS, KAVANAGH, and SOURIS, JJ., concurred.