FERD L. ALPERT INDUSTRIES, INC., *v.*
OAKLAND METAL STAMPING CO.

1. EVIDENCE—PAROL EVIDENCE—MORTGAGES—CONVEYANCES—EXCEPTIONS.

    One of many exceptions to the parol evidence rule is that parol evidence may be admitted to prove that a written conveyance, absolute in its terms, was intended by the parties to operate only as a mortgage.

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Deeds § 271; 30 Am Jur 2d, Evidence § 1068; 36 Am Jur, Mortgages § 136.
[2] 36 Am Jur, Mortgages § 133.
[3] 27 Am Jur 2d, Equity §§ 20, 28; 36 Am Jur, Mortgages § 132.
[4] 36 Am Jur, Mortgages § 125 *et seq.*
[5] 36 Am Jur, Mortgages § 142.
[6] 41 Am Jur, Pleading §§ 336, 337.
[7] 36 Am Jur, Mortgages § 132 *et seq.*

2. MORTGAGES—CONVEYANCES—BURDEN OF PROOF—EQUITY.

A heavy burden of proof rests upon one who invokes the equitable doctrine under which a written conveyance, absolute in its terms, may be found to have been intended by the parties to operate only as a mortgage.

3. SAME — CONVEYANCES — EQUITY — EVIDENCE — REFORMATION — RESCISSION—CANCELLATION.

Fraud or mistake are not essential to a cause seeking to establish that a conveyance, absolute in form, is in fact a mortgage, but are essential elements of a cause of action for reformation, rescission or cancellation of a written conveyance.

4. SAME—EQUITY—CONVEYANCES—DEBTOR AND CREDITOR.

Courts of equity have, from an early day, interfered between creditor and debtor to prevent oppression and when the evidence establishes that a deed from a debtor to a creditor, absolute on its face, was actually intended by the parties to be a mortgage, a court of equity will find it to be a mortgage under the maxim that once a mortgage always a mortgage.

5. SAME—EQUITY—CONVEYANCES—DEBTOR AND CREDITOR—STATUTE OF FRAUDS.

Neither the statute of frauds nor the statute requiring powers and trusts to be created in writing is encroached upon by a court of equity exercising its jurisdiction in finding that an absolute conveyance from debtor to creditor is, instead, a mortgage, since a different construction of such statutes would make them what they were never intended to be, a shield for the protection of oppression and fraud.

6. JUDGMENT—SUMMARY JUDGMENT—PLEADING—MORTGAGES—CONVEYANCES—DEBTOR AND CREDITOR—EQUITY.

Summary judgment for plaintiff on defendant's counterclaim *held,* reversed, and the matter remanded for trial where defendant's counterclaim alleged that an absolute deed to plaintiff-creditor, made while defendant-debtor was in dire financial condition, was intended by the parties to be only a mortgage, since such allegations, if established by competent proofs, would entitle defendant to the equitable relief sought.

7. FRAUD—SUFFICIENCY OF EVIDENCE—MORTGAGES—CONVEYANCES—DEBTOR AND CREDITOR.

Allegations of counterclaim under which defendant-debtor sought to have an absolute deed to plaintiff-creditor declared an equitable mortgage, that when defendant's president inquired as to the reason for the absolute deed, plaintiff's representa-

tives stated "Don't worry, we will sell it to you any time for what we put in, plus interest," and, on at least one other subsequent occasion stated to defendant "I want to see you make a lot of money so you can get your business back," *held*, insufficient, even if untrue, to support a finding of fraud, although of probative value in determining whether the parties intended the transaction to be an absolute conveyance and lease-back or an equitable mortgage.

Appeal from Court of Appeals, Division 2; T. G. Kavanagh, P. J., and Burns and McGregor, JJ., affirming Macomb, Noe (Alton H.), J. Submitted April 11, 1967. (Calendar No. 4, Docket No. 51,550.) Decided June 6, 1967.

3 Mich App 101, reversed.

Complaint by Ferd L. Alpert Industries, Inc., a Michigan corporation, Norman Levy, Ferd L. Alpert, and Louis Alpert, against Oakland Metal Stamping Co., a Michigan corporation, for damages for nonpayment of rent under certain leases. Counterclaim by defendant to rescind the leases for fraud and misrepresentation. Complaint withdrawn. Summary judgment for plaintiffs on defendant's counterclaim. Defendant appealed. Judgment affirmed by Court of Appeals. Defendant appeals. Reversed and remanded.

*Milton Y. Zussman* and *Matthews, Nank & Spier* (*Richard A. Nank,* of counsel), for plaintiffs.

*Johnston & Wendt* (*Robert L. Coburn,* of counsel), for defendant.

Souris, J. This appeal is from a judgment of dismissal of defendant's counterclaim for its failure to state a cause of action. According to the recitals

thereof the judgment was entered on plaintiffs' motion pursuant to GCR 1963, 117.2(1), immediately after counsel's opening statement on the counterclaim. The Court of Appeals affirmed the judgment. 3 Mich App 101. We reverse and remand for further proceedings.

Plaintiffs' complaint for damages for defendant's alleged breach of certain real and personal property leases was withdrawn, apparently by consent of all parties and of the circuit judge, several months before the case was called for trial on defendant's counterclaim. The counterclaim sought, in a single confusing count, rescission or cancellation of the leases and certain contemporaneously executed deeds, bills of sale, and assignments or, alternatively, their treatment as an equitable mortgage of all of the property involved and, as well, damages for the allegedly unlawful ouster of the cross-plaintiff from possession of the property. The opinion of the Court of Appeals quotes a portion only of the counterclaim. The balance is quoted in the margin of this opinion.[1] The answer to the counterclaim denied

---

[1] "9. That through the fraud, over-reaching and misrepresentation of the plaintiffs as aforesaid, they have carried into effect a scheme, design and conspiracy to denude the defendant of assets, which it here alleges to be of a value greatly in excess of $300,000 which, if not rescinded and set aside by the judgment of this court, will unjustly enrich the plaintiffs and will result in the financial ruin of the defendant; that, in equity and good conscience, the transaction between the parties as set forth aforesaid should be abrogated and the parties restored to the positions they respectively occupied prior to said transaction having been forced upon the defendant by the fraud and scheming of the plaintiffs; that the defendant offers to do equity and to restore the plaintiffs to their former position, and that it stands ready to pay to the plaintiffs or to the clerk of this court an amount equal to that expended by the plaintiffs, together with any interest and reasonable costs and charges incurred by them as the court may determine upon the trial of this cause.

"10. That the representations of plaintiffs up to consummation of the transaction led defendant to believe it would be refinanced; and at the time of the said transaction, when on its face it appeared that a sale was to be effected, the intention of the defendant was to be refinanced and the words and assurances of the plaintiffs were of such nature as to lead the defendant to believe that what appeared

its allegations of fraud, unconscionable dealing and unjust enrichment and alleged that the transaction was intended to be an outright sale and lease-back by cross-plaintiff of all of its property in precisely the manner disclosed by the written instruments executed by the parties.

One of many exceptions to the parol evidence rule is that parol evidence may be admitted to prove that a written conveyance absolute in its terms was intended by the parties to operate only as a mortgage. *Wadsworth* v. *Loranger,* Harr (Mich) 113; *Fuller* v. *Parrish* (1854), 3 Mich 211; *Batty* v. *Snook* (1858), 5 Mich 231; *Emerson* v. *Atwater* (1859), 7 Mich 12; and, of more recent vintage, *Selik* v. *Goldman Realty Co.* (1927), 240 Mich 612, and *Ellis* v. *Wayne Real Estate Company* (1959), 357 Mich 115. For citation and discussion of authority imposing a heavy burden of proof upon one who invokes this equitable doctrine, see *Schmidt* v. *Barclay* (1910), 161 Mich 1 (20 Ann Cas 1194). While fraud or mistake are essential elements of a cause of action for reformation, rescission or cancellation of a written conveyance, see *River Rouge Bank* v. *Fisher* (1964), 372 Mich 558, 562, and *Smith* v. *Taber* (1961),

---

to be a sale would be honored by plaintiffs in the same manner and effect as a mortgage.

"11. That plaintiffs ousted defendant from the subject premises at a time when defendant was commencing its busy season, during which defendant's business derives the greater percentage of its yearly profits; and that such wrongful action, upon a lease obtained by the fraud and scheming of the plaintiffs, has caused damage to defendant in the amount of $350,000.

"Wherefore the defendant prays:

"a. That the court treat the transaction aforesaid, as null and void, and that the said assignments, deeds, agreements and leases be set aside, rescinded and held for naught;

"b. That the parties be restored to the positions they respectively occupied prior to said transaction having been entered into;

"c. That the court treat the transaction as a mortgage rather than a sale and that defendant be permitted to redeem.

"d. That defendant have a judgment against the plaintiffs for its damages in the sum of $350,000 and costs.

"e. That the court grant other relief in the premises as to the court shall seem reasonable, just and equitable."

362 Mich 619, they are not essential to a cause seeking to establish that a conveyance absolute in form is in fact a mortgage. Mr. Justice MANNING,[2] in *Emerson* v. *Atwater, supra,* stated the equitable principles governing this class of cases as follows:

"The principle on which courts of equity proceed in this class of cases, is not that it is in contemplation of law a fraud for A, who has made a parol agreement to sell B a piece of land, to refuse to deed the land, or to live up to his parol agreement. It would be as clear a violation of the statute of frauds in a court of equity to decree a specific performance of such contract, as it would in a court of law to sustain an action on it for damages. It is upon no supposed fraud of this kind that equity bases its action. It proceeds on a different principle, viz.: The relation between the parties of debtor and creditor, or borrower and lender, and the abuse of that relation. The statute of frauds was intended for persons dealing with each other at arm's length, and on an equal footing; and even then, when the contract has subsequently been in part performed by one party, with the assent of the other, equity will compel the latter to perform on his part, as it would be a fraud on the statute for a party to invoke its protection under such circumstances.

"Courts of equity frequently set aside deeds and other contracts between trustee and *cestui que trust,*

---

[2] JUSTICE MANNING served as Michigan's Chancellor from 1842 to 1847. Mr. JUSTICE COOLEY, in his preface to the second edition of Harrington's reports of the Court of Chancery, pp viii to ix, in 1872, bestowed the following high praise, posthumously, upon Chancellor MANNING:

"Chancellor MANNING was thoroughly familiar with equity law, and fully imbued with the spirit of its principles; and his disposition to insist upon correct practice was well understood, and had an important influence in educating a good chancery bar. When that clear-headed, upright and conscientious judge withdrew from the bench, and when his temporary successor followed him, the excellent and uniform chancery practice which had grown up soon fell into a disorder from which it has never recovered."

attorney and client, guardian and ward, and parent and child, and other like cases, when it has reason for believing the relation between the parties has been abused, when such deed or contract, had it been between parties not so related, would have been held good. The principle the court goes on in cases of debtor and creditor, is the same as in the cases we have just mentioned. The difference is in its application only. In these last cases it is to prevent the abuse of a confidence which the relation implies. In the case of debtor and creditor, the abuse of the power of coercion which a creditor sometimes, by the force of circumstances, has over the debtor. So sensible are courts of the existence of this power, and of its abuse, and that debtor and creditor do not at all times stand on an equal footing, that the borrower, says Judge Story, 'has been significantly called the slave of the lender:' 1 Story's Equity Jurisprudence (6th ed), § 302, p 335. And Judge Green, in *Fuller* v. *Parrish,* says : 'Mortgages, and conveyances intended to operate as mortgages, are generally given by the necessitous to the more opulent, the debtor to the creditor, the borrower to the lender, the suppliant for favor to him who has power to make the terms upon which it shall be granted. The man whose property is about to be sacrificed by a creditor, will not hesitate in regard to the amount of security to be given, nor the manner of giving it, if he can loan the money to satisfy the debt, or otherwise gain time for its payment. He will not hesitate to execute a deed, or bill of sale, absolute upon the face of it, but intended to operate as a mortgage, to four times the value of the loan, without insisting upon a written deed of defeasance:' 3 Mich 211, 217.

"Courts of equity have, from an early day, interfered between creditor and debtor to prevent oppression. What is now a mortgage, was at common law, and until courts of equity interfered, a conditional conveyance of land, that became absolute on

the nonperformance of the condition by the grantor, on or before the day mentioned in the deed.   The penalty of a bond was collectible at law, until equity restrained its collection, on the payment of what was due on the condition.   When the relation is mortgagor and mortgagee, once a mortgage always a mortgage, is the maxim in equity.   See 2 Leading Cases in Equity, pt 2, p 432, where may be found a large collection of cases in which deeds have been declared to be mortgages.

"Honesty and fair dealing, and the good of society, require that the cupidity of man should be kept within certain limits, and not be allowed to roam at large.   To define and fix these limits, and give relief when they are transcended, has ever been the province of courts of equity, and their chief excellence consists in a wise and judicious exercise of this part of their jurisdiction.   Neither the statute of frauds, nor the statute requiring powers and trusts to be created in writing, is, we think, encroached on, by a court of equity exercising its jurisdiction in this class of cases, as it was wont to do before these statutes were passed.   A different construction of the statutes would make them what they were never intended to be, a shield for the protection of oppression and fraud."   *Emerson* v. *Atwater* (1859), 7 Mich 12, 24–26.

We conclude from the foregoing that cross-plaintiff's counterclaim, and, as well, its counsel's opening statement, stated a cause of action which it was entitled to submit for judgment on the merits.   Dismissal for failure to state a cause of action, therefore, was error requiring reversal of the judgment and remand for further proceedings.

Because this matter must be remanded, it may not be amiss to note that Ferd Alpert's statements to Chester Chapie, set forth in paragraph 5 of the counterclaim, see 3 Mich App 101, 106, upon which statements cross-plaintiff predicates its allegation

of fraud, are not, even if untrue, such that they would support a finding of fraud. See *Roy Annett, Inc.,* v. *Kerezsy* (1953), 336 Mich 169, 172, and *Lisowek* v. *Bagozzi* (1958), 354 Mich 398, 402. However, such statements, if proved, might have probative value in determining whether the parties intended the transaction to be an absolute conveyance and lease-back or an equitable mortgage.

Reversed and remanded to the circuit court for further proceedings. Cross-plaintiff may tax its costs.

DETHMERS, C. J., and KELLY, BLACK, T. M. KAVANAGH, O'HARA, ADAMS, and BRENNAN, JJ., concurred.