No. 13354

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

MIKE T. QUINN,

Plaintiff and Respondent,

-vs-

GEORGE HAROLD BRIGGS, LELAND RICHARD
BRIGGS, JOHN W. BRIGGS, and ROBERT
HUGH BRIGGS,

Defendants and Appellants.

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

Kline and Niklas, Helena, Montana
John R. Kline argued, Helena, Montana
Schulz, Davis and Warren, Dillon, Montana
Carl Davis argued, Dillon, Montana

For Respondent:

Leaphart Law Firm, Helena, Montana
C. W. Leaphart argued and W. William Leaphart
appeared, Helena, Montana
John H. Jardine argued, Whitehall, Montana

Submitted: January 20, 1977

Decided: MAY 11 1977

Filed: MAY 11 1977

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff brought this action in the district court, Beaverhead County, in equity to rescind a contract to recover $100,000.00 in payments and to cancel a promissory note for $150,000.00. Defendants counterclaimed seeking enforcement of the $150,000.00 promissory note and attorney fees for defense of the contract. The district court ordered rescission of the contract, restitution of the $100,000.00 in payments, cancellation of the promissory note and denied defendants any recovery on their counterclaim. The controlling issue is whether plaintiff is entitled to relief on the ground of unilateral mistake.

Plaintiff Mike T. Quinn is a cattle rancher and speculator in ranch real estate. He buys ranch properties for resale, rather than long term investment. Defendants are the majority stockholders of Briggs Ranch, Inc., a Montana corporation, located south of Dillon, Montana and engaged in the ranching business. In December 1973, plaintiff visited the Briggs Ranch to inspect cattle which he was interested in purchasing. Plaintiff was accompanied by Bruce Mecklenburg, a licensed real estate broker. Mecklenburg informed plaintiff the Briggs Ranch was for sale. Plaintiff expressed an interest in purchasing and returned to the ranch several times to inspect the holdings of Briggs Ranch Inc.

At the recommendation of Mecklenburg, plaintiff met with an attorney from Bozeman, Montana. Plaintiff, Mecklenburg and the attorney discussed the aspects involved in purchasing Briggs Ranch Inc. Subsequent to this initial meeting, plaintiff conferred with the attorney and discussed in particular (1) the large dollar value involved in the purchase; (2) the fact the proposed sale

- 2 -

agreement was for the purchase of corporate stock, as opposed to the purchase of assets; (3) the number of cattle involved in the ranch operation; (4) the possibility of forfeiture in the event that $50,000.00 was paid in under the sale agreement and plaintiff was unable to make the second payment; and (5) general tax consequences associated with the purchase of corporate stock.

On February 18, 1974, plaintiff, plaintiff's attorney, Mecklenburg and George Harold Briggs met with defendants' attorney at his office with the intent of negotiating the sale of Briggs Ranch Inc. A substantial part of the day involved the discussion and explanation of the sale agreement entitled "AGREEMENT TO PURCHASE STOCK OF BRIGGS RANCH, INC.". The culmination of these negotiations was the execution of the sale agreement; the execution of the memorandum entitled "MEMORANDUM OF UNDERSTANDING AS TO AGREEMENT TO PURCHASE STOCK OF BRIGGS RANCH, INC."; and plaintiff's tender of $50,000.00.

The sale agreement provided for the purchase of 5,000 shares of common capital stock, which comprised all of the issued and outstanding shares of Briggs Ranch, Inc. The purchase price was $6,550,000.00 and payment was provided for in the agreement.

"(b) Buyer shall pay said purchase price as follows:

"(1) Fifty Thousand and 00/100 Dollars (50,000.00) upon execution of this Contract, receipt of which is herewith acknowledged.

"(2) Two Hundred Thousand and 00/100 Dollars ($200,000.00) On June 1, 1974.

"(3) One Million Three Hundred Thousand Dollars, ($1,300,000.00) not later than the 2nd day of January, 1975. In the event that Buyer fails to make any payment called for herein and/or fails to deposit a sufficient amount in escrow as provided in paragraph 3 to satisfy Briggs Ranch, Inc.'s obligations as agreed in paragraph 17, on or before 5:00 o'clock P.M. on said 2nd day of January, 1975, this Contract shall end and be of no further force

and effect at the time and on the date of Buyer's default, and Sellers shall have no further obligation under this Contract and Sellers shall retain as liquidated damages for the breach of said Contract the payment or payments made to the time of default.

"(4) The balance of the purchase price in the amount of $5,000.000.00 shall be satisfied by note executed by Buyer and by Briggs Ranch, Inc., payable on the basis of 20 equal annual amortized installments of principal and interest. Interest at the rate of 7-1/2% per annum shall be paid monthly. The interest on said $5,000,000.00 shall commence and shall run from the 31st day of December, 1974; the first such monthly payment shall be due on or before the 31st day of January, 1975, and each payment thereafter shall be due on or before the last day of each succeeding month. The annual principal payments shall commence on the 31st day of December, 1975, and shall be payable on the 31st day of December each and every year thereafter until the unpaid balance, plus interest at the rate of 7-1/2% per annum is paid in full, and in any and all events, on or before the 31st day of December, 1984, upon which last mentioned date there shall be a 'balloon' payment of the entire unpaid balance of principal and interest."

The sale agreement further provided that, upon the purchase of the corporate stock, plaintiff was to assume certain debts of Briggs Ranch, Inc.:

"17. RELEASE FROM ESCROW:

"The 5,000 shares of Briggs Ranch, Inc., stock shall be released to the Buyer at such time as the Federal Land Bank Mortgage has been satisfied by Buyer through Briggs Ranch, Inc., and the payment contemplated by paragraph 2.(b)(3) has been paid to the Sellers on January 2, 1975. In this regard, it is further agreed among the parties that:

"(a) Buyer shall use the money deposited in escrow on January 2, 1975, to cause Briggs Ranch, Inc., to satisfy its indebtedness to the Federal Land Bank. In this regard Buyer warrants that he knows the principal amount of the Federal Land Bank mortgage to be $850,254.88, and the amount of the accrued interest thereon to January 2, 1975. Buyer agrees and does hereby assume the obligation of the payment of the said $850,254.88 principal and all interest accruing from and after January 1, 1974, to the date of payment in full on January 2, 1975. It is further understood that Buyer shall obtain and record a Release of Mortgage from said Federal Land Bank. It is further understood that Briggs Ranch, Inc., owns 9,750 shares of Federal Land Bank stock worth $5.00 per share, for a total amount of $48,750.00, which shall be credited upon the Federal Land Bank loan upon payment in full. During the term of this Contract said Buyer shall keep all of the real property presently owned by Briggs

- 4 -

Ranch, Inc., free and clear of all liens, mortgages or other encumbrances, other than the mortgage granted to Sellers and except that the Havasu and Texas properties may be dealt with by Buyer as Buyer sees fit.

"(b) At such time as the Buyer satisfies the Note set forth on Exhibit 'D' in full, the contents of the escrow shall be delivered to the Buyer." (Emphasis added.)

Under paragraph 4(b) of the sale agreement -- "CORPORATE

PROPERTIES" appears:

"(b) The Texas farm, described on Exhibit 'B' attached hereto, and the Lease thereon which expires December 31, 1977. Subject to that certain Mortgage in the amount of approximately $27,000.00, plus interest to date, said Mortgage to remain an obligation of Briggs Ranch, Inc., or its successor in interest, after the sale of the stock contemplated herein and to which Sellers are relieved from any obligation thereon by Buyer." (Emphasis added.)

The contract further specified the manner by which plaintiff would acquire possession of the stock certificates and the ranch premises:

"3. DELIVERY OF STOCK AND PAYMENT OF PURCHASE PRICE:

"The certificates for the shares of capital stock sold hereunder shall be delivered to the escrow agent named hereafter, on the 31st day of December, 1974, upon acknowledgement to the Sellers by the Buyer before December 15, 1974, that (a) the payment called for in paragraph 2.(b)(3) will be made on January 2, 1975; (b) that the note and mortgage specified in paragraph 2.(b)(6) has been executed by the Buyer and Briggs Ranch, Inc.; (c) that a sufficient amount will be deposited with the escrow agent to satisfy the Federal Land Bank loan referred to in paragraph 17. In the event Buyer informs Sellers that the payments specified in paragraph 2.(b)(3) will be met and Buyer fails to make said payments on January 2, 1975; in addition to the forfeitures specified in said paragraph 2(b)(3) Buyer will be responsible for payment to Sellers of all legal and escrow costs incurred in preparing documents and setting up the escrow and all income taxes caused by Sellers' repossession of the stock sold herein."

"5. POSSESSION:

"Possession of the premises owned by the Corporation, except as noted herein, shall be surrendered on the 31st day of December, 1974, or as soon thereafter as it is physically possible for the Buyers to assume the complete operation of the ranch. It is understood that Sellers will cooperate with Buyer and stay on the premises and help with the operation for a reasonable time after December 31, 1974, to assure a smooth transition in the management of the operation."

Subsequent to executing the sale agreement with defendants, plaintiff executed two contracts drafted by his attorney. One of the contracts, dated February 18, 1974, and entitled "CONTRACT FOR LEGAL SERVICES", provided that plaintiff and Mecklenberg would pay their attorney legal fees at specified rates for the performance of legal work arising out of the Briggs/Quinn sale. This contract further provided that the attorney would receive $25,000.00 upon resale of the Briggs Ranch. The second contract, also dated February 18, 1974, and entitled "AGREEMENT" acknowledged Mecklenburg's efforts in the completion of the sale of Briggs Ranch, Inc. The contract provided Mecklenburg be compensated for all expenses incurred in the resale or attempted resale of Briggs Ranch, Inc. and in lieu of a real estate commission that plaintiff and Mecklenburg divide on an even basis any profit realized from the resale of Briggs Ranch, Inc.

Prior to the June 1, 1974, contract payment deadline, plaintiff realized he could not tender the required $200,000.00 payment. On June 1, 1974, plaintiff tendered $50,000.00 and a promissory note in the amount of $150,000.00.

Mecklenburg continued to offer the Briggs Ranch for sale until December 9, 1974. On December 17, 1974, plaintiff executed a notice of rescission which was delivered to defendants' attorney. Thereafter, plaintiff filed his action for rescission in the district court, Beaverhead County.

On January 13, 1976, the district court sitting without a jury, heard the action to rescind the AGREEMENT TO PURCHASE STOCK OF BRIGGS RANCH, INC. The district court found that plaintiff, at the time of the execution of the sale agreement (1) did not understand that he was buying the corporate stock of Briggs Ranch,

Inc.; (2) did not appreciate the consequences that flow from a stock purchase, as opposed to an asset purchase; (3) believed the purchase price of Briggs Ranch to be $6,550,000.00; (4) failed to comprehend there would be additional payments required of him in order to satisfy the $27,000.00 Texas farm mortgage and the $850,254.88 indebtedness to the Federal Land Bank; and (5) did not appreciate the tax consequences associated with the purchase of capital stock.

The district court concluded: Plaintiff executed the sale agreement under mistakes of fact; that the mistakes of fact were not caused by plaintiff's neglect of a legal duty, but occurred regardless of plaintiff's exercise of ordinary care; that it would be unconscionable to enforce the sale agreement; and defendants would be unjustly enriched if the sale agreement was enforced. Defendants appeal from the district court's judgment ordering (1) rescission of the sale agreement; (2) restitution from defendants in the amount of $100,000.00; (3) cancellation of the promissory note for $150,000.00;and (4) that defendants recover nothing from plaintiff on their counterclaim.

For the following reasons the judgment of the district court is reversed.

A party to a contract cannot avoid the contract on the ground that he made a mistake where there has been no misrepresentation, no ambiguity in the terms of the contract and the other party has no notice of such mistake and acts in good faith. Furthermore, even if one of the contracting parties believes the words of the contract mean something different, the parties to the contract are bound by the plain meaning of the words used in the agreement as properly interpreted, unless the other party knows of such mistake. 17 Am Jur 2d, Contracts §§ 146,148.

One who executes a written contract is presumed to know the contents of the contract and to assent to those specified terms, in the absence of fraud, misrepresentation, or other wrongful act by the other contracting party. Absent incapacity to contract, ignorance of the contents of a written contract is not a ground for relief from liability. Parchen v. Chessman, 49 Mont. 326, 142 P. 631; Ferd L. Alpert Industries, Inc. v. Oakland Metal Stamping Co., 3 Mich.App. 101, 141 N.W.2d 671, reversed on other grounds, 379 Mich.272, 150 N.W.2d 765.

If a contracting party acts negligently and in such a manner as to lead others to suppose that the writing is assented to by him, the contracting party will be bound in law and in equity, even though the contracting party supposes the writing is an instrument of an entirely different character. 17 Am Jur 2d, Contracts §149; Hjermstad v. Barkuloo, 128 Mont. 88, 270 P.2d 1112. The integrity of written contracts would be destroyed if contracting parties, having admitted signing the instrument, were allowed to rescind the contract on the basis they neither read nor understood the expressed agreement. Ryan v. Ald,Inc., 149 Mont. 367, 427 P.2d 53.

Section 13-903, R.C.M. 1947, sets forth the grounds for rescission of contract:

> "When party may rescind. A party to a contract may rescind the same in the following cases only:
>
> "1. If the consent of the party rescinding, or of any party jointly contracting with him was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;
>
> "2. If, through the fault of the party as to whom he rescinds, the consideration for his obligation fails, in whole or in part;

"3. If such consideration becomes entirely void
from any cause;

"4. If such consideration, before it is rendered
to him, fails in a material respect, from any cause;
or,

"5. By consent of all the other parties."

Plaintiff contends he executed the sale agreement under

mistakes of fact as to the character of the property being sold

and the purchase price of the property.  In addition, plaintiff

claims he acted without understanding the tax consequences of the

purchase, a mistake of law.  For plaintiff to avoid the sales

agreement he must show that his unilateral mistakes meet the

standards set forth in sections 13-313,314, R.C.M. 1947, which

provide:

"13-313.  Mistake of fact.  Mistake of fact is a mistake
not caused by the neglect of a legal duty on the part
of the person making the mistake, and consisting in:

"1. An unconscious ignorance or forgetfulness of
a fact, past or present, material to the contract; or,

"2. Belief in the present existence of a thing
material to the contract, which does not exist, or in
the past existence of such a thing, which has not existed."

"13-314.  Mistake of law .  Mistake of law constitutes a
mistake, within the meaning of this chapter, only when it
arises from:

"1. A misapprehension of the law by all parties, all
supposing that they knew and understood it, and all making
substantially the same mistake as to the law; or,

"2. A misapprehension of the law by one party, of
which the others are aware at the time of contracting,
but which they do not rectify."

Here, the evidence fails to support plaintiff's contention

that he executed the sale agreement under mistakes of fact.  The

sale agreement clearly and specifically sets forth the subject

matter of the sale agreement, the purchase price of the capital

stock and the debts assumed by the buyer.  Furthermore, defendants'

counsel spent considerable time in explaining the provisions of the sale agreement prior to executing the instrument. Plaintiff, Mecklenburg and their attorney were in attendance and participated in the clarification and execution of the sale agreement and the execution of the memorandum of understanding. If plaintiff failed to understand the terms of the sale agreement it was not due to any misrepresentations on the part of defendants. Under these circumstances, neither plaintiff's purported inability to comprehend the terms of the sale agreement nor his failure to procure adequate advice can be attributed to defendants. Plaintiff was under a legal duty to execute the sale agreement with the prudence and care of a reasonable and cautious businessman. Having failed to exercise such care, plaintiff cannot seek relief from a court of equity on the ground of unilateral mistake of fact.

Similarly, plaintiff's argument that he executed the sale agreement without appreciating the tax consequences falls short of the standard required to avoid a contract. Section 13-314, R.C.M. 1947, provides that a mistake of law is ground for relief only when there is a misapprehension of the law by all parties or a misapprehension of the law by one party with the knowledge of the other contracting party. Clearly, defendants were aware of the tax consequences flowing from the sale agreement. Plaintiff, on the other hand, never brought to defendants' attention the fact that he was either unaware of the tax consequences or unable to understand the tax consequences. Under these circumstances, equitable relief cannot be utilized to rescind the contract.

We conclude that plaintiff is bound by the terms of the agreement to purchase stock of Briggs Ranch, Inc. Plaintiff's

filing of the notice of rescission and failure to tender payments pursuant to the sale agreement amounted to a material breach of contract and plaintiff is to recover nothing. In view of the express terms of the sale agreement providing for the payment of defendants' attorney fees, the matter of attorney fees is remanded to the district court to determine reasonable attorney fees and costs.

The judgment of the district court is reversed and the cause is dismissed.

_____
, Justice.


We Concur:

_____
Chief Justice

_____

_____

_____
Justices.