No. 87-229

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

SHELBY KUENNING,

        Claimant and Appellant,

   -vs-

BIG SKY OF MONTANA,
         Employer,
    and
STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

APPEAL FROM:  The Workers' Compensation Court, The Honorable
              Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Ugrin, Alexander, Zadick & Slovak; J. David Slovak,
        Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Norman C. Peterson, Asst. Atty. General, Helena

Submitted on Briefs:  Jan. 28, 1988

Decided:  March 1, 1988

Filed:  MAR 1 - 1988

Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Claimant Kuenning appeals the May 21, 1987, decision of the Workers' Compensation Court. The decision denied Kuenning's petition for additional permanent partial disability benefits. We affirm.

Kuenning presents two issues for our review:

1. Did the court abuse its discretion in concluding that Kuenning had failed to prove an actual loss of earning capacity as required by § 39-71-703, MCA (1985), for partial disability benefits?

2. Does substantial evidence support the court's decision?

Kuenning is thirty-eight years old. He has a college degree in television production. Since 1973, Kuenning has worked as a carpenter during the summer and fall months. In late 1982, Kuenning began working as a ski patrolman for Big Sky of Montana (Big Sky) during the winter months.

While working for Big Sky on April 25, 1983, Kuenning injured his right knee when his snowmobile rolled on him. After completing an exercise program to restore strength to the knee, Kuenning returned to work as a ski patrolman for the 1983-1984 season. In September 1984, exploratory surgery on the right knee revealed a partial tear of the anterior cruciate ligament and spontaneous healing of a cartilage tear. However, no surgical repair was made on the knee. Kuenning resumed ski patrolling for the 1984-1985 season.

On January 22, 1985, Kuenning tore the medial collateral ligament in his left knee while skiing. The ligament was surgically reattached with a staple. Kuenning has returned to work as a ski patrolman with no subsequent injuries. Both

2

knee injuries have reached maximum healing. The parties agree that both knee injuries occurred in the course and scope of Kuenning's employment with Big Sky.

Big Sky was enrolled under the State Compensation Insurance Fund. Big Sky accepted liability and paid medical benefits, temporary total disability benefits and an indemnity.

On July 17, 1986, Kuenning petitioned for additional permanent partial disability benefits under § 39-71-703(1), (1985) MCA, which states: "Weekly compensation benefits for injury producing partial disability shall be 66-2/3% of the actual diminution in the worker's earning capacity measured in dollars . . ." (Emphasis added.) We note that § 39-71-703, MCA (1985), was extensively amended by the 1987 Legislature. We will limit our opinion to the 1985 statute.

After trial on November 24, 1986, the Workers' Compensation Court ruled that Kuenning was not entitled to any permanent partial disability benefits beyond those already paid by Big Sky. The court noted that Kuenning had not presented any probative evidence of lost earning capacity as a carpenter and ski patrolman. The court stated: "Even if the Court were to accept the unsubstantiated testimony of the claimant as to his loss of earnings as a carpenter, claimant still has not met his burden of proof."

More importantly, the court noted that Kuenning had not presented any evidence of his earning capacity in the open labor market. The court stated: "Claimant is an educated, physically fit, and relatively young man with obvious capabilities. Claimant cannot justify his entitlement to permanent partial disability simply by his limiting, personal preference for a particular field of employment."

The Workers' Compensation Court concluded:

> While claimant has not met his burden as to a 703 case, this does not preclude the possibility that claimant may be able, in the future, to demonstrate a loss of earning capacity. Claimant may also, if not now then in the future, be able to demonstrate disability sufficient to carry a 705 case. . . .

Issue 1. Loss of Earning Capacity

Kuenning contends that the two knee injuries have significantly reduced his earning capacity because he now works in pain. Kuenning asserts that he cannot work efficiently as a roofing and framing carpenter and must limit himself to "finish" carpentry. Kuenning also asserts that his ability to perform his duties as a ski patrolman have been "slightly" impaired and his stamina has decreased.

On review of this issue, we note the general rule that the claimant bears the burden of establishing a right to compensation. Gierke v. Billings Gazette (Mont. 1986), 730 P.2d 1143, 1148, 43 St.Rep. 2322, 2329. In order to prevail under § 39-71-703, MCA (1985), a claimant must show an actual diminution in present earning capacity and such a loss must be measured on the open labor market. Dunn v. Champion International Corp. (Mont. 1986), 720 P.2d 1186, 1191, 43 St.Rep. 1124, 1129.

A claimant's earning capacity consists of the market demand for labor and claimant's ability to supply such labor. This ability must be defined by the claimant's age, education, background, work experience and qualifications. Holton v. F. H. Stolze Land & Lumber Co. (1981), 195 Mont. 263, 266,

4

637 P.2d 10, 12. Simply put, the more labor skills a claimant possesses, the larger his labor market.

Kuenning's skills gave him solid ability to earn in the open labor market. He has Cardio-Pulmonary Resuscitation and Emergency Medical Technician certifications. He has one college degree and is one quarter away from having two additional college degrees in photography and English literature.

However, throughout these proceedings Kuenning made no attempt to quantify his earning capacity on the open market. He ignored repeated requests by the State Compensation Fund to document his loss of earning capacity. Instead, Kuenning continually restricted his focus to ski patrol and carpentry. Within this limited market, Kuenning's primary evidence consisted merely of his unsubstantiated testimony about decreased efficiency.

We note that Kuenning retained his ski patrol job. Furthermore, Kuenning presented no objective evidence that he lost any carpentry jobs for which he had applied. His own testimony undercuts his contention of lost earning capacity:

> Q. So you haven't lost any carpentry employment because of your knee injuries; is that correct?
>
> A. Actual employment, no.

Kuenning's only support came from the deposition of his expert, a rehabilitation counselor. However, the counselor restricted his evaluation to carpentry and ski patrol. The counselor concluded that Kuenning works at an 80 percent post-injury efficiency.

The counselor's testimony was effectively rebutted by Big Sky's expert, a vocational evaluation coordinator. The coordinator looked at the open labor market and placed

Kuenning in a much better position than the average rehabilitation client. The coordinator found numerous occupational categories in which Kuenning would have transferable skills, especially in the areas of television and radio communications. These categories were matched to employers in the Bozeman area. The coordinator testified that Kuenning, with his educational background, was "almost overqualified" to work as a ski patrolman and carpenter. The coordinator concluded that Kuenning had many job opportunities and had not suffered any earning loss.

In summary, we note that the purpose of workers' compensation is to protect the worker against economic loss. Hafer v. Anaconda Aluminum Company (Mont. 1984), 684 P.2d 1114, 1116, 41 St.Rep. 1403, 1405. However, we will not allow the compensation fund to subsidize a claimant's pursuit of specialized employment when other work is available. Section 39-71-703, MCA (1985), tailors compensation to the actual damage a claimant suffers to his earning capacity. Kuenning's evidence of loss of earning capacity in ski patrol and carpentry is marginal at best. His evidence of loss in the open market is nil. We hold that the Workers' Compensation Court properly concluded that Kuenning did not meet his burden of proof under § 39-71-703, MCA (1985).

Issue 2. Substantial Evidence.

The evidence before the court consisted largely of oral testimony by Kuenning and deposition testimony by two rehabilitation experts and two orthopedic surgeons. Kuenning contends that the evidence does not support the decision of the Workers' Compensation Court.

6

On appellate review, we will defer to the Workers' Compensation Court's judgment as to the weight and credibility of conflicting evidence. Nelson v. ASARCO, Inc. (Mont. 1987), 739 P.2d 943, 945, 44 St.Rep. 1074, 1077. Our review is confined to determining whether substantial evidence supports the findings. Shupert v. Anaconda Aluminum Co. (Mont. 1985), 696 P.2d 436, 439, 42 St.Rep. 277, 281.

The primary evidence was the medical testimony. Kuenning's treating physician, Dr. Frank Humberger, assigned a 5 percent impairment of the whole man for the right knee injury and a 6 percent impairment of the whole man for the left knee injury. Dr. Humberger testified that any instability was mild and that exercise had compensated for the injuries. Dr. Humberger further stated that Kuenning's condition does not prevent him from returning to work in both of his usual occupations without any limitations or restrictions. Dr. Humberger testified:

> Q. Given your evaluations of Mr. Kuenning, for both his right and left knees, would you find that there would be any medical reason why Mr. Kuenning, if he chose to, could not do that [roofing] type of work?
>
> A. I see none.

Dr. Humberger's opinion was supported by Dr. Lowell Anderson, who examined Kuenning's left knee. Regarding Kuenning's physical ability, Dr. Anderson testified: "I did not put any restrictions on his activity because he had already stated that he was back to full activity and he was tolerating this quite well."

The lower court also based its decision on Kuenning's oral testimony. Kuenning admitted that he had not lost any

carpentry jobs in the Bozeman area due to his injuries. Kuenning testified he continued to work as a ski patrolman with no income loss, medical restrictions or job modification. In his own words, his performance as a ski patrolman has only been "slightly" affected by the knee injuries.

Kuenning's claim for an increase in permanent partial disability must be supported "by a preponderance of medical evidence." Section 39-71-116(12), MCA (1985). When the medical testimony and Kuenning's testimony are combined with Kuenning's failure to prove loss of earnings on the open market, Kuenning's claim fails. We hold that the evidence supports the decision of the Workers' Compensation Court.

Affirmed.

_J. A. Turnage_
Chief Justice

We concur:

_John Conway Harrison_

_Justices_

8