No. 87-272

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

CHARLOTTE JOHNSON; ROBERT E. JOHNSON;
O. PRISCILLA JOHNSON; T. OTTO JOHNSON;
KARLA D. JOHNSON; JACQUELENE J.LAMBERT;
and EVERETT E. LAMBERT,

Plaintiffs and Respondents,

-vs-

THE ESTATE OF WM. A. SHELTON, Deceased;
THE ESTATE OF LAURA E. SHELTON, Deceased;
ALLEN B. SHELTON; ALLEN B. SHELTON, Trustee;
THE ESTATE OF ALLEN B. SHELTON, Deceased;
RUTH O. SHELTON; ROBERT M. GRAVES; VERA
SHELTON GRAVES, a/k/a VERA L. SCHNASE; COUNTY
OF LEWIS AND CLARK, a political subdivision
of the State of Montana; COUNTY TREASURER OF
LEWIS AND CLARK COUNTY; DEPARTMENT OF REVENUE,
an administrative agency of the State of
Montana, and its Director, JOHN LaFAVER, et al,

Defendants and Appellants.

APPEAL FROM: District Court of the First Judicial District
In and for the County of Lewis and Clark
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:
J. Brian Tierney, Butte, Montana

For Respondent:
Michael J. Rieley; Luxan and Murfitt, Helena, Montana

Submitted on Briefs: March 24, 1988

Decided: May 17, 1988

Filed: MAY 1 7 1988

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The plaintiff, Mrs. Charlotte Johnson, has brought an action in equity to quiet title to 320 acres of land located in Lewis and Clark County, near East Helena, Montana. The only defendant contesting the quiet title action is Mrs. Vera Shelton Graves, Mrs. Johnson's first cousin, who asserts that the property is rightfully hers under the wills of William and Laura Shelton, the grandparents of both women as well as the adoptive parents of Mrs. Graves.

The Sheltons died in 1926 and 1927. This present dispute centers on their wills, which devise an undivided one-half interest in 320 acres of property in Lewis and Clark County, Montana, and 23 acres of property in Walla Walla County, Washington, to Allen B. Shelton, the son of the testators and uncle to the parties here. Allen B. Shelton was qualified and served as trustee under the will. The will directed that if Allen B. Shelton died without issue of his body, as he did in 1967, and Mrs. Graves survived him, the property of the trust would pass to Mrs. Graves. Subsequently, if Mrs. Graves also died without issue of her body, the will directed that the property of the trust would pass to the children of Alma Shelton Foster and C.U. Foster. Mrs. Johnson is the sole surviving child of Alma and C.U. Foster. The record reveals that Mrs. Graves is 71 years old, widowed, and has no living natural children, thus making it unlikely that she would have issue of her body at the time of her death. It is noted, however, that she adopted a 65-year-old man as her son in 1986.

Mrs. Graves argues to this Court that the second contingent limitation on the trust property, which would pass the property to Mrs. Johnson if Mrs. Graves dies without issue, is void under § 70-15-205, MCA, vesting the trust

2

property in Mrs. Graves. Mrs. Johnson, the plaintiff, argues that a contest over the construction of the Shelton wills is inappropriate 60 years after the Shelton deaths and also that Mrs. Graves' rendering of a quitclaim deed on the Montana property is conclusive.

In 1976, Mrs. Graves decided to sell a piece of property called the "Snake River Property," which Allen Shelton had acquired during his lifetime. However, before she could sell the property for $235,000 her attorney advised her to get the signatures of Mrs. Johnson and Mrs. Johnson's brother, Allen Foster, since deceased, because they had a contingent interest in the Shelton estate. Mrs. Graves pocketed $150,000 from the sale, Mrs. Johnson and her brother received $42,500 each.

Mrs. Graves and Mrs. Johnson decided in 1977 to divide up the Shelton estate. Mrs. Johnson, who had been living near the Montana property, offered to Mrs. Graves a quitclaim deed on the 23 acres in Washington in consideration of "clear title." Likewise, Mrs. Graves gave Mrs. Johnson a quitclaim deed on the 320 acres in Montana. Mrs. Johnson recorded that deed and has since considered the Montana property to be hers even though tax notices identify the property as belonging to the William Shelton estate. Mrs. Johnson has paid all taxes on the property and deeded portions of it to her children.

The District Court of the First Judicial District, having considered these factors, entered summary judgment in favor of Mrs. Johnson. Mrs. Graves appeals and argues that the District Court erred:

-by disregarding Mrs. Graves' alleged full fee simple absolute in the Montana property;

-by ruling there had been no mistake of fact or of law in the exchange of quitclaim deeds;

-by ruling that there was valid consideration for the exchange of quitclaim deeds; and

3

-by dismissing Mrs. Graves' counterclaim as barred by laches.

We affirm the District Court's judgment.

We note first that in actions in equity, this Court will accept the findings of the District Court unless there is a "decided preponderance of the evidence against them," and that where issues of fact are close, we defer to the District Court because it is in a better position to determine the facts. Peterson v. Taylor (Mont. 1987), 735 P.2d 1120, 1122, 44 St.Rep. 754, 756, citing Dahlberg v. Lannen (1929), 84 Mont. 68, 77, 274 P. 151, 153; and Rase v. Castle Mountain Ranch, Inc. (Mont. 1981), 631 P.2d 680, 684, 38 St.Rep. 992, 996. The basis underlying summary judgment in a quiet title action is similar to that elsewhere: summary judgment is proper when there are no genuine issues of material fact. Benson v. Diehl (Mont. 1987), 745 P.2d 315, 316, 44 St.Rep. 1455, 1456, citing Rule 56 M.R.Civ.P.

Mrs. Graves has argued throughout this case that the wills of her grandparents/adoptive parents devised the trust property unto her. The District Court, however, was correct when it ruled that Montana courts need not give a construction to those wills at this late date. The simple fact is that subsequent to receiving by devise what she now calls a full fee simple absolute in 320 acres of land in Montana and 23 acres in Washington, Mrs. Graves offered a quitclaim deed on the Montana property to Mrs. Johnson in exchange for Mrs. Johnson's quitclaim deed on the Washington property. Thus, this dispute does not concern whether Mrs. Graves had a fee simple absolute in all of the property of the Shelton estate. If indeed she had a fee simple absolute in the entire estate, she exercised one of the rights of ownership by dividing and alienating the Montana property. If her interest was less than a fee simple absolute, the exchange of quitclaim deeds indicates that she was

4

contracting for a fee simple in the Washington property from the person who held a contingent interest. Instead, this dispute focuses on whether the exchange of quitclaim deeds was valid.

Section 70-20-103, MCA, provides sample wording for a quitclaim deed. The contested quitclaim deed, although using different wording, remains substantially similar since it names the grantor and grantee, locates by legal description the property involved, notes the consideration and is signed and dated by the grantor. As such, it represents a valid quitclaim deed, and Mrs. Johnson enjoys conclusive rights in the property as against anyone other than a purchaser in good faith for valuable consideration previously recorded. See § 70-20-303, MCA. Mrs. Johnson gave up valid consideration for this quitclaim deed since she relinquished a quitclaim deed on the Washington property, in which she had a contingent interest, in order to clear all titles. Section 28-2-801, MCA, defines good consideration, inter alia, as "[a]ny prejudice suffered or agreed to be suffered by [a] person, other than such as he [or she] is at the time of consent lawfully bound to suffer, as an inducement to the promisor . . . " The relinquishment of a legal right is sufficient consideration for a contract. Rickett v. Doze (1979), 184 Mont. 456, 459, 603 P.2d 679, 680. In short, Mrs. Johnson gave consideration for this exchange when she surrendered her contingent interest in the Washington property, which afforded Mrs. Graves a fee simple absolute in the Washington property.

Mrs. Graves' assertion that she acted under mistaken belief or due to mistaken legal advice does not overcome the fact that she chose to surrender a quitclaim deed on the property. Mrs. Graves was charged with the responsibility of acquainting herself with the effects of the quitclaim deed before she signed it since her husband's consultant made out

5

the deeds. One who executes a written contract is presumed to know its contents and assent to them; ignorance of the contents is not grounds for relief from liability. Quinn v. Briggs (1977), 172 Mont. 468, 476, 565 P.2d 297, 301. Neither does Mrs. Graves' reliance on her attorney's advice in a previous land transaction and the advice of her husband and his consultant on the exchange of quitclaim deeds represent mistake of law. Mrs. Graves cannot obtain relief unless she proves ambiguity in the deed, misrepresentation, bad faith action by Mrs. Johnson, or knowledge on Mrs. Johnson's part that the transaction was something more than a mutual exchange of quitclaim deeds. Quinn, 565 P.2d at 301. She has proven none of these elements.

Finally, we sustain the District Court's decision that it would be inequitable to allow Mrs. Graves to repudiate this exchange of quitclaim deeds nine years after the transaction. The doctrine of laches applies "where there has been an unexplained delay of such duration or character as to render the enforcement of an asserted right inequitable." Clayton v. Atlantic Richfield Co. (Mont. 1986), 717 P.2d 558, 561, 43 St.Rep. 717, 720, quoting Brabender v. Kit Manufacturing Co. (1977), 174 Mont. 63, 67-68, 568 P.2d 547, 549. In the present dispute, more than nine years elapsed from the time of the exchange of quitclaim deeds to Mrs. Graves' pronouncement in her counterclaim that she still owned the Montana property by virtue of the Shelton wills. In that interval Mrs. Johnson had improved on the land and Mrs. Johnson's grandson had built a home on a portion of the property she deeded to him.

Where a party is actually or presumptively aware of her rights but fails to act, laches is appropriate. Clayton, 717 P.2d at 561. A party is held to be presumptively aware of his or her rights "where the circumstances of which he [or she] is cognizant are such as to put a [person] of ordinary

6

prudence on inquiry." Hereford v. Hereford (1979), 183 Mont. 104, 108-09, 598 P.2d 600, 602. The mutual transfer of quitclaim deeds in property between two parties is a most serious matter; Mrs. Graves testified at her deposition that the exchange was made to facilitate her sale of five acres of the Washington property. She further testified that at the time of the transaction she trusted her husband would obtain the proper legal advice even though the wills named her as devisee. Mrs. Graves demonstrated by such testimony that she had presumptive knowledge of the effect of the transaction, but did not advise a lawyer of her concerns until October, 1983. Mrs. Graves' counterclaim is properly barred by laches.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

7