No. 87-455

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

ABIGAIL WILSON HOUTCHENS,

        Claimant and Appellant,

    -vs-

STATE OF MONTANA, EMPLOYMENT SECURITY
DIVISION, Employer,
      and
STATE COMPENSATION INSURANCE FUND,

        Defendant and Respondent.

---

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
              Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        McChesney, Grenfell & Ogg; H. L. McChesney, Missoula,
        Montana

    For Respondent:

        Oliver H. Goe, Helena, Montana

---

Submitted on Briefs:  April 21, 1988

Decided:    May 17, 1988

Filed: MAY 1 7 1988

_Ethel M. Harrison_
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Claimant Abigail Wilson Houtchens appeals from a July 14, 1987, decision of the Workers' Compensation Court finding that Houtchens is not totally disabled and is not entitled to total disability benefits. We affirm.

Appellant Houtchens raises two issues for our review. We have restated the issues as follows:

1. Does substantial credible evidence support the Workers' Compensation Court's finding that claimant failed to prove an actual loss of earning capacity pursuant to § 39-71-703, MCA (1985)?

2. Did the Workers' Compensation Court err when it failed to award claimant indemnity benefits pursuant to §§ 39-71-705 through -708, MCA (1985)?

Claimant and appellant Abigail Houtchens is thirty-six years old and the mother of two children. Claimant graduated from high school and has since earned 54 college credits. Previously, claimant was employed as a waitress, day-care operator, real estate agent, retail store manager, telephone operator, office manager, substitute teacher and as an operator of a school photography business.

At the time of her injury, claimant was employed by the State of Montana, Employment Security Division at the Missoula Job Service. Houtchens began her employment with the Missoula Job Service in October 1984. Claimant was employed primarily as a switchboard operator with related receptionist and light clerical duties. Houtchens worked five days a week, eight hours a day, and was paid $4.67 per hour. The parties agree that claimant suffered a compensable injury on November 1, 1984.

Prior to her employment at the Missoula Job Service, in April 1984, claimant suffered an injury while cross-country

skiing. Following her injury claimant Houtchens developed acute myofascial syndrome and suffered from tightness in her neck and shoulder muscles. Claimant was treated by Dr. Donald R. Nevin in April 1984. Dr. Nevin testified by deposition that claimant suffered "a muscular condition characterized by tenderness with muscle spasm, localized areas of pain called trigger points and frequently referred pain: that is, pain which radiates beyond the area of muscle inflammation."

On November 30, 1984, claimant was examined by a second physician, Steven G. Powell. Dr. Powell noted that claimant suffered from neck and shoulder pain. Dr. Powell concurred with Dr. Nevin's diagnosis that Houtchens suffered from myofascial syndrome which was aggravated by employment related stress. Dr. Powell's continued treatment of claimant revealed that on January 20, 1986, she was suffering from "non-specific chronic neck pain [with a] normal neurologic examination."

Following her November 1, 1984, injury, claimant continued to be treated by Dr. Nevin. Dr. Nevin prescribed that claimant undergo physical therapy. Dr. Nevin also prescribed various drugs including pain killers and anti-inflammatories. Dr. Nevin testified that the mechanical requirements of claimant's employment, coupled with her employment and domestic stress, aggravated her injury. As a result, in June 1985, Dr. Nevin advised claimant Houtchens to discontinue her employment. On or about June 13, 1985, claimant voluntarily left her employment with the Missoula Job Service.

Claimant was then referred to Dr. Steven F. Johnson for a neurological opinion. At that time, claimant was suffering from pain and stiffness in her back. Claimant was also suffering from mental depression. Dr. Johnson diagnosed claimant's condition as cervical syndrome, ruling out a nerve

impingement syndrome. Johnson recommended that claimant utilize a jackson cervical pillow and continue physical therapy.

The State Compensation Insurance Fund paid temporary total disability compensation of $124.67 per week beginning August 9, 1985, and continuing through July 1986. In December 1986, claimant received a lump sum based on a 5 percent permanent partial impairment rating determined by a medical panel.

On October 23, 1985, Dr. Nevin again examined claimant and found her condition had improved with better flexibility and a greater range of motion. Nevin noted that claimant "still has bad days where her upper back and neck muscles are tight and uncomfortable." However, claimant was not experiencing headaches, had not needed physical therapy since June 1985 and was enrolled in an aerobics class. Dr. Nevin forwarded a certificate of condition to the State Compensation Insurance Fund (State Fund) stating that claimant could return to work provided she could "avoid prolonged sitting, working over a desk, typewriter, etc."

On May 12, 1986, claimant Houtchens was admitted to St. Patrick Hospital for evaluation by a medical panel composed of the following physicians: Steven F. Johnson, M.D., Neurologist; David P. Jacobson, M.D., Orthopedist; Stanley G. Moisey, Psychiatrist; and William J. Norman, M.D., Neurologist. In its May 23, 1986, evaluation, the panel reported that claimant suffered from a slight narrowing of a cervical disc space between C-5 and C-6. The panel found that claimant suffered a 5 percent whole person impairment. No surgical treatment was recommended nor was further study of claimant's injury. Additionally, the panel found that claimant suffered a psychiatric "adjustment disorder with mixed emotional features . . ." The panel also found that

4

claimant's psychological disorder was not related to her injury. Accordingly, no impairment rating was established.

## Substantial Credible Evidence

Claimant Houtchens contends that substantial credible evidence does not support the Workers' Compensation Court's decision denying claimant benefits under § 39-71-703, MCA (1985)?[1]

Previously, we held that this Court will not substitute its judgment for that of the Workers' Compensation Court concerning the credibility of the witnesses or the weight given their testimony. Jensen v. Argonaut Insurance Co. (1978), 178 Mont. 59, 62, 582 P.2d 1191, 1193. Where the Workers' Compensation Court's decision is based on conflicting evidence, our function of review is confined to determining whether there is substantial credible evidence supporting the lower court's decision. Shupert v. Anaconda Aluminum Company (Mont. 1985), 696 P.2d 436, 439, 42 St.Rep. 277, 281. However, when critical evidence is entered by deposition, we are in "as good a position" as the Workers' Compensation Court to judge the weight given to the deposition testimony. Shupert, 696 P.2d at 439, 42 St.Rep. at 281.

As mentioned earlier, Houtchens brought her claim for benefits for her alleged actual loss of earning capacity pursuant to § 39-71-703, MCA (1985). In Kuenning v. Big Sky of Montana (Mont. 1988), 750 P.2d 1091, 1093, 45 St.Rep. 383, 385, we stated the general rule that the claimant bears the burden of establishing her right to compensation, citing Gierke v. Billings Gazette (Mont. 1986), 730 P.2d 1143, 1148,

---

1    Section 39-71-703, MCA, was extensively amended by the 1987 Legislature.

5

43 St.Rep. 2322, 2329. In order to prevail pursuant to § 39-71-703, MCA (1985), a claimant must show an actual diminution in present earning capacity and such loss must be measured on the open labor market. Dunn v. Champion International Corp. (Mont. 1986), 720 P.2d 1186, 1191, 43 St.Rep. 1124, 1129.

Respondent's vocational rehabilitative specialist, David P. Balak, provided unrebutted testimony concerning claimant's post-injury earning capacity. Balak testified that he utilized the Vocational Diagnostic and Assessment of Residual Employability (VDARE-test) when evaluating claimant Houtchens. Balak stated that he considered claimant's prior work history, physical status, subjective complaints, mental status and transferable skills including aptitude, intelligence, and verbal communication. Balak found that a number of "actual" jobs including real estate sales agent, retail store manager, department manager, administrative clerk, teachers aide, residence leasing manager and restaurant manager, etc., were available in the Missoula area. Further, Balak concluded that claimant could expect to earn wages commensurate with her pre-injury wages.

In its May 23, 1986, report, the St. Patrick's Hospital medical panel agreed with David Balak's assessment of claimant when the panel reported that claimant is able to return to work:

> [Claimant] has reached maximum healing. She may return to the labor market. There are no particular restrictions. No frequent, strenuous and vigorous use of the cervical spine is recommended. Certainly her age, previous experience, training, general physical condition and education should be such that numerous occupations would be available to her . . .

6

Claimant attempted to rebut Balak's and the medical panel's testimony stating that she suffered occasional flare-ups due to self-employment in her ice cream shop. We note claimant's testimony that since December 1986 she has worked between eight and ten hours per day in the ice cream shop.

A review of the record reveals that substantial credible evidence supports the decision of the Workers' Compensation Court. Respondent offered testimony that jobs are available (1) at similar pay levels, (2) within claimant's physical and psychological limitations, and (3) that the available jobs are located within claimant's geographical area. Claimant clearly failed to carry her burden that her actual earning capacity has been reduced. Accordingly, we agree with the Workers' Compensation Court that claimant has not suffered a loss of actual earning capacity pursuant to § 39-71-703, MCA (1985).

## Indemnity Benefits

Claimant admits that she incorrectly sought benefits under § 39-71-703, MCA (1985). Nevertheless, claimant Houtchens argues that the Workers' Compensation Court erred when it failed to award indemnity benefits pursuant to §§ 39-71-705 through -708, MCA (1985).

In Kuenning, we held:

> While claimant has not met his burden as to a -703 case, this does not preclude the possibility that claimant may be able, in the future, to demonstrate a loss of earning capacity. Claimant may also, if not now then in the future, be able to demonstrate a [§§ 39-71-705 through -708, MCA (1985)] case . . .

750 P.2d at 1093, 45 St.Rep. at 385.

7

Clearly, claimant may, in the future, present an argument before the Workers' Compensation Court that she is entitled to indemnity benefits.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices