No.  90-214

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990


MORGAN HARTFIELD,

     Claimant and Appellant,

  -vs-

CITY OF BILLINGS,

     Employer,

  and

STATE COMPENSATION INSURANCE FUND,

     Defendant and Respondent.

FILED

OCT 25 1990

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM:    Workers' Compensation Court; The Honorable Timothy
              Reardon, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          James M. Regnier, Esq., Regnier, Lewis & Boland,
          P.C., Great Falls, Montana

     For Respondent:

          William O. Bronson, Esq., James, Gray & McCafferty,
          Great Falls, Montana


                  Submitted on Briefs:  August 30, 1990

                         Decided:  October 25, 1990

Filed:

_____
          Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

The claimant, Morgan Hartfield, brought this action in Workers' Compensation Court to reopen his full and final compromise settlement with the State Compensation Mutual Insurance Fund, approved on March 25, 1982. In its order of March 27, 1990, the Workers' Compensation Court rejected Hartfield's claims that the settlement should be set aside because of constructive fraud, lack of consideration, or unilateral mistake of law, and found for the defendants. From this judgment, Hartfield appeals. We affirm.

Appellant presents the following issues:

1. Did the Workers' Compensation Court err in refusing to set aside the settlement agreement between Hartfield and the State Fund on the ground of constructive fraud?

2. Did the Workers' Compensation Court err in refusing to set aside the settlement agreement on the basis of unilateral mistake?

3. Did the Workers' Compensation Court err in failing to determine the settlement agreement void for lack of consideration?

4. Did the Workers' Compensation Court err in finding that Hartfield's petition to reopen his settlement agreement with the State Fund was barred by the applicable statute of limitations?

On January 14, 1981, Morgan Hartfield injured his neck in the course of his employment with the City of Billings as an assistant building maintenance supervisor. Prior to the 1981 injury, Hartfield had suffered other neck injuries and had undergone two cervical fusions. Hartfield had negotiated an earlier settlement

2

agreement with the State Compensation Mutual Insurance Fund (State Fund) in the amount of $6,500 for a 1977 injury.

Because of Hartfield's injury, his physician, Dr. John Dorr, an orthopedic surgeon, concluded that Hartfield should not return to work. At the request of the State Fund, Dr. Dorr later estimated that Hartfield's permanent physical impairment was 20 per cent of the whole body, at least 10 percent attributable to his 1981 accident.

Hartfield applied for and received social security disability benefits. Hartfield, a retired Air Force Chief Master Sergeant having served on active duty for 27 years prior to his employment with the City of Billings, also received service retirement benefits. In November 1981 the State Fund responded to Mr. Hartfield's application for benefits by awarding him approximately $4,000 in retroactive benefits and informed him that he would continue to receive $166.36 per week in temporary total disability benefits. Since the weekly benefit was offset by Hartfield's social security benefits, he actually received $107.46 per week.

In February 1982, a field representative of the State Fund, Timothy Tindall, met with Hartfield in his home to discuss the settlement award. Hartfield, who was not represented by an attorney, signed the "Petition for Full and Final Compromise Settlement of Total Disability Benefits," a preprinted form. The agreement became final when approved by the Workers' Compensation Court in March 1982.

The agreement recited that the claimant "appears to be totally

disabled from finding regular employment of any kind in the normal labor market." Hartfield agreed to accept $21,000, payable in monthly installments of $405.99 for 60 months. As stated in the agreement, the $21,000 represented approximately 191 weeks of total disability benefits "after the rate has been reduced as a result of the offset taken against the claimant's social security benefits." The payments included interest, bringing the total settlement amount to approximately $24,300. Hartfield continued to receive social security disability benefits until he reached retirement age.

Prior to his injury, Hartfield had read a pamphlet indicating that workers' compensation benefits could be paid to the claimant until his death. Under the law in effect at the time of Hartfield's injury, he could be paid total permanent disability benefits "for the duration" of his disability. Section 39-71-702(1), MCA (1979). Hartfield claimed that he had asked Tindall about receiving benefits beyond retirement age and that Tindall informed him that benefits ceased at age 65. Hartfield further asserted that he did not know that after signing the settlement agreement his monthly payments would be less than he was currently receiving monthly.

In December 1986 Hartfield read a news article about a workers' compensation case involving an insured who had terminated workers' compensation benefits when the claimant reached retirement age. In the case, this Court held that a totally disabled individual was entitled to permanent partial disability benefits

4

after reaching the age of 65. See Hunter v. Gibson Products of Billings (1986), 224 Mont. 481, 730 P.2d 1139. According to Hartfield's testimony, the article motivated him in January 1987 to consult an attorney in regard to his settlement agreement with the State Fund. This action was then filed.

## I

Did the Workers' Compensation Court err in refusing to set aside the settlement agreement between Hartfield and the State Fund on the ground of constructive fraud?

Hartfield argues that the circumstances surrounding his signing of the settlement agreement amounted to constructive fraud because Tindall misrepresented facts concerning workers' compensation benefits. Specifically, Hartfield alleges the following: (1) he was told that he would not be entitled to receive any benefits after age 65; (2) the settlement sum of $21,000 was inadequate for an individual who was totally disabled; (3) the monthly sum was less than he had received prior to the settlement; (4) the settlement was not negotiated; and (5) Tindall did not inform him that he had a right to consult an attorney prior to signing the agreement.

According to § 28-2-406, MCA, constructive fraud consists in:

> (1) any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him by misleading another to his prejudice or to the prejudice of anyone claiming under him; or (2) any such act or omission as the law especially declares to be fraudulent, without respect to actual fraud.

5

A plaintiff must plead and prove the following elements of fraud:

    1.  A representation;

    2.  Falsity of the representation;

    3.  Materiality of the misrepresentation;

    4.  Speaker's knowledge of the falsity of the representation or ignorance of its truth;

    5.  Speaker's intent that it be relied upon;

    6.  The hearer's ignorance of the falsity of the representation;

    7.  The hearer's reliance on the representation;

    8.  The hearer's right to rely on the representation; and

    9.  Consequent and proximate injury caused by the reliance.

Wiberg v. 17 Bar, Inc. (Mont. 1990), 788 P.2d 292, 295, 47 St.Rep. 429, 433. Constructive fraud requires a showing of all these elements, except the fifth one, the "speaker's intent that the representation be relied upon." Under the statute, an intent to deceive is not necessary to prove constructive fraud. Section 26-2-406, MCA; Batten v. Watts Cycle and Marine, Inc. (Mont. 1989), 783 P.2d 378, 381, 46 St.Rep. 1984, 1987.

The Workers' Compensation Court found insufficient evidence to support Hartfield's claim that Tindall erroneously informed him about receiving workers' compensation benefits past age 65. This Court will not substitute its judgment for that of the Workers' Compensation Court concerning the credibility of witnesses or the weight given their testimony. Houtchens v. State Employment

6

Security Division (1988), 232 Mont. 99, 102, 754 P.2d 824, 826.

The record shows that Tindall and Hartfield had met twice before February 17, 1982, when the settlement agreement was signed. The next day Tindall wrote a memorandum noting that the settlement agreement had been fully discussed:

> A petition for Full and Final Compromise Settlement for total disability was read by the claimant. The claimant and I then discussed the petition in full.

In the memorandum Tindall describes the details of the settlement agreement, including Hartfield's Air Force retirement benefits, his social security disability benefits, and the fact that he is still entitled to medical and hospital benefits relating to his injury. He then concludes:

> [T]his settlement will enable the claimant to budget and arrange his livelihood until he can receive regular Social Security Retirement.

Although Hartfield's retirement income was a consideration in deciding the terms of the settlement, Tindall testified that "at no time did I mean to imply then, prior to that time or now that a person would have their benefits terminated just because they reached age 65." Tindall further testified that in discussing the agreement with Hartfield, he could not have confused which law applied to Hartfield's injury "because it is cast in stone that the statutes that we are to use on an individual claim are the statutes that are in effect on the date of injury."

In his testimony, Hartfield claimed that Tindall had been "emphatic" that benefits would cease at age 65. However, Hartfield admitted that he had a difficult time remembering the events

surrounding the signing of the settlement agreement, and could not recall his two contacts with Tindall prior to the signing of the settlement agreement.

The trier of fact is the exclusive judge of a witness' credibility. Section 26-1-302, MCA; Emick v. Koch (1987), 227 Mont. 365, 368, 739 P.2d 947, 949. In addition to observing the demeanor of the witness, the trier of fact can take into account the witness' capacity to recollect events, his inconsistent statements, and other evidence contradicting the witness' testimony. Section 26-1-302, MCA. In this case, we find that the Workers' Compensation Court had reason to discredit Hartfield's testimony.

Furthermore, the plaintiff must present more than his own opinion as evidence of fraudulent conduct. Batten, 783 P.2d at 381, 46 St.Rep. at 1987. Hartfield cites an inadequate settlement sum and lower monthly payments as proof that he would not have agreed to them unless he believed that he could not receive benefits beyond age 65. However, the settlement was advantageous to Hartfield in many respects. The fact that Hartfield may not have received a maximum lifetime payout is not enough for a finding of constructive fraud.

Hartfield makes much of the fact that monthly payments under the settlement agreement were less than the monthly amounts he was receiving at the time of the settlement in temporary total disability benefits. However, Hartfield knew how much he was receiving before the contract was signed, as well as the amount of

8

each monthly payment under the settlement agreement. A party is presumed to know the contents of a contract and to assent to those terms. Quinn v. Briggs (1977), 172 Mont. 468, 476, 565 P.2d 297, 301. A party asserting fraud "is put on inquiry notice of the other party's misdeeds, and must exercise ordinary diligence to discover the facts constituting the fraud." Holman v. Hansen (1989), 237 Mont. 198, 202, 773 P.2d 1200, 1203; but see Jenkins v. Hillard (1982), 199 Mont. 1, 7-8, 647 P.2d 354, 358 (holding that opportunity to inspect real estate premises is not a defense to plausible misrepresentations). At the time of the agreement Hartfield could have discovered the difference in the amount of monthly payments.

Hartfield claims that the State Fund should have advised him that he could have an attorney and that he could negotiate the settlement amount. The party must show that the circumstances concerning the acts of fraud were such that he could not have discovered the fraud at the time. Mobley v. Hall (1983), 202 Mont. 227, 232, 657 P.2d 604, 607.

The record indicates that at the time of the agreement Hartfield was at least aware that an issue existed regarding benefits continuing past retirement age. The court concluded that Hartfield was an "intelligent, articulate man, well aware of the significance of a sound economic future for himself and his family." Hartfield had served 27 years in the Air Force and had negotiated a settlement once before with the State Fund. We conclude that in itself failure to inform Hartfield of his right

9

to seek an attorney or his right to negotiate the settlement sum does not constitute or contribute to constructive fraud. We hold that Hartfield did not meet his burden of showing that the State Fund had misrepresented facts surrounding the settlement agreement.

## II

Did the Workers' Compensation Court err in refusing to set aside the settlement agreement on the ground of unilateral mistake?

Hartfield alleges that he entered into the settlement agreement under the mistaken belief that the law had changed and that he could not receive workers' compensation benefits beyond the age of 65.

Consent to the contract is lacking if the parties enter into the contract through mistake. Weldele v. Medley Development (1987), 227 Mont. 257, 260, 738 P.2d 1281, 1283. According to § 28-2-410(2), MCA, unilateral mistake arises from "a misapprehension of the law by one party of which the others are aware at the time of contracting but which they do not rectify." In order for unilateral mistake to operate as a rescission of the contract, the plaintiff must show that the defendant knew of the other party's misapprehension of the law. Quinn, 172 Mont. at 478, 565 P.2d at 302. As noted above, the Workers' Compensation Court determined that Hartfield failed to prove any misrepresentation of the law by Tindall. In addition, Hartfield has not shown that Tindall was aware that Hartfield misunderstood the law. Therefore, we find that Hartfield's claim of unilateral mistake is unsupported by the

10

facts.

### III

Did the Workers' Compensation Court err in failing to determine the settlement agreement void for lack of consideration?

Hartfield contends that under the terms of the settlement contract, he was not afforded any consideration because he received $60 less per month than he had been receiving from bi-weekly temporary total disability benefits and because he could have collected those benefits for the rest of his life.

Sufficient consideration is essential to the existence of a contract. Section 28-2-102(4), MCA. Consideration is defined by § 28-2-801, MCA, as:

> Any benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered or agreed to be suffered by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor .
> . . .

Written contracts are presumptive evidence of consideration. Section 28-2-804, MCA. The burden of showing a lack of consideration lies with the party seeking to invalidate the contract. Section 28-2-805, MCA.

Hartfield failed to overcome the presumption that the written contract was evidence of consideration. Besides the $21,000, in reaching the settlement Hartfield avoided the possibility for adjustment of his claim and, if necessary, litigation of his disability status. Hartfield argues that the settlement agreement

11

gave him total disability status. However, the contract only states that the claimant "appears to be totally disabled." Moreover, the settlement agreement states that "a controversy exists between the claimant and insurer over the amount and duration of compensation benefits." Had Hartfield not signed the agreement, litigation of his disability status, which controlled the duration and amount he would eventually receive, was a possibility.

The agreement conferred other benefits on Hartfield as well. Prior to signing the agreement, in the event of his death, workers' compensation payments would have ceased. Section 39-71-726, MCA (1979). Under the settlement agreement, benefits would have continued to be paid to his estate after his death. In addition, Hartfield was still entitled to receive medical and hospital benefits. We affirm the Workers' Compensation Court's conclusion that $21,000 constituted good and valuable consideration even though it may not have represented the maximum amount that Hartfield could have received.

When reviewing decisions of the Workers' Compensation Court, our function is confined to determining whether the court's judgment is supported by substantial credible evidence. Houtchens, 232 Mont. at 102, 754 P.2d at 826. We hold that the refusal of the court to set aside the settlement agreement on the grounds of constructive fraud, unilateral mistake of law, or lack of consideration is supported by substantial evidence.

12

IV

The Workers' Compensation Court also found that the claims of constructive fraud and mistake were barred by the two-year statute of limitations which provides that the statute is tolled until the "discovery by the aggrieved party of the facts constituting the fraud or mistake." Section 27-2-203, MCA. Hartfield claims that he discovered the fraud or mistake in December 1986 when he read the newspaper account of the Hunter case, stating that claimants could receive benefits after reaching age 65.

Since we agree with the court's decision that Hartfield failed to establish either constructive fraud or unilateral mistake of law, we need not further address whether the statute of limitations was tolled.

The judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13

Justice John C. Sheehy, dissenting:

I dissent. It is not necessary to discuss such legal quanta as constructive fraud, unilateral mistake, consideration or any other variant of contract or limitations law. It is only necessary to consider here an injured worker who, innocently or not, was induced to trade a $54,750 asset for $21,000. The very purpose of the Workers' Compensation Act is ignored here by the majority: that purpose to restore in some measure to the worker the losses he sustains from injuries in industry without requiring litigation, all in return for the worker giving up his common law rights of action against his employer. That is the consideration we should regard, and then insist that the worker be protected in that end.

It is simple folly to accept that an injured worker, unskilled in law, is on an equal contractual footing with an agent of the Fund in a discussion of settlement, a settlement initiated by the Fund, holding out visions of sugar plums to the worker to give up his full rights. This is dirty business, and I will not condone it. I would reverse and set aside the unjust agreement.

_____
                    Justice

Justice William E. Hunt, Sr.:

I concur in the dissent of Justice Sheehy.

_____
                    Justice

14