No. 94-011

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

MONTE PERRYMAN,

      Petitioner and Appellant,

    v.

STATE COMPENSATION MUTUAL
INSURANCE FUND/BLUE RANGE MINING CO.,

      Respondent/Employer
      and Respondent.

**FILED**

DEC 23 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    The Workers' Compensation Court
               The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Torger S. Oaas, Lewistown, Montana

        For Respondent:

            Charles G. Adams, Helena, Montana

Submitted on Briefs:  November 21, 1994

Decided:  December 23, 1994

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Monte Perryman appeals the decision of the Workers' Compensation Court denying his claim for wage supplement benefits. We affirm.

We rephrase the issue as whether the Workers' Compensation Court erred in denying Perryman's claim for wage supplement benefits.

In September 1990 Perryman was injured while working on an underground mining project near Lewistown, Montana. A rock fell and struck him on the back, resulting in a herniated disc. Perryman's employer, Blue Range Mining Co., was covered under the State Compensation Insurance Fund (State Fund) Perryman filed a workers' compensation claim. State Fund accepted liability for Perryman's claim, and paid various compensation and medical benefits.

Following Perryman's surgery and rehabilitation, an Employability Assessment was performed. Based on medical testimony and Perryman's previous vocational experience, the assessment found Perryman capable of working as a heavy equipment operator. The Department of Labor then formed a Rehabilitation Panel pursuant to §§ 39-71-1016 and -1017, MCA (1989). The Panel concurred with the Employability Assessment, finding that the first appropriate option for Perryman was to "return to a related occupation suited to the claimant's education and marketable skills" pursuant to § 39-71-1012(2)(c), MCA (1989). Perryman did not contest the Panel's

2

findings.  On April 13, 1993, the Department of Labor issued an Order affirming the recommendations of the Rehabilitation Panel. Perryman did not appeal this order.  Both parties agreed that heavy equipment operation was within Perryman's post-injury capabilities.

Perryman has held several post-injury occupations, with wages ranging from $4.50 per hour to $10.00 per hour.  At the time of this petition, Perryman was employed as a truck driver with Casino Creek Concrete Co. earning approximately $8.00 per hour.

Betty Cross, a vocational rehabilitation counselor, testified as a witness on behalf of State Fund.  Cross's research revealed that a heavy equipment operator in Montana earns between $10.00 and $18.00 per hour.  Cross testified that based on Perryman's previous work experience he was capable of earning between $12.00 and $16.00 per hour.

At the time of his injury, Perryman was earning $12.00 per hour at Blue Range Mining Co.  However, Perryman did not consistently work 40 hours per week during his employment with Blue Range.  Had he consistently worked 40 hour weeks, his average pay would have been $480 per week.  Due to his reduced working hours, the Workers' Compensation Court calculated his actual average earnings to be $388.61 per week during the entire period he worked at Blue Range and $393.75 per week during his final four pay periods.

The Workers' Compensation Court found that while Perryman only earned $8.00 per hour at the time of his petition, he had failed to

show that he had been diligent in attempting to procure higher paying employment. The court found that since Perryman was capable of earning as much or more than he actually earned at the time of his injury, he was not entitled to wage supplement benefits under § 39-71-703, MCA (1989).

Did the Workers' Compensation Court err in denying Perryman's claim for wage supplement benefits?

We review the findings of the Workers' Compensation Court to determine if they are supported by substantial credible evidence. Buckentin v. State Compensation Insurance Fund (Mont. 1994), 878 P.2d 262, 263, 51 St.Rep. 656, 657.

We review the Workers' Compensation Court's interpretation of the law to determine if its interpretation is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

The law in effect at the time of the claimant's injury controls. Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 730 P.2d 380. Since Perryman was injured in September of 1990, the 1989 version of the Montana Code applies.

Perryman claims that the Workers' Compensation Court misinterpreted §§ 39-71-123 and -703, MCA (1989). He argues that this misinterpretation resulted in assigning him an artificially low pre-injury wage and an artificially high post-injury wage, thus unfairly denying him a wage supplement claim.

4

Perryman first argues that the Workers' Compensation Court misinterpreted § 39-71-703, MCA (1989). Section 39-71-703(1)(b)(i), MCA (1989), reads:

> (b) The following procedure must be followed for a wage supplement:
>
> (i) 'A worker must be compensated in weekly benefits equal to 66 2/3% of the difference between the worker's <u>actual wages</u> received at the time of the injury and the wages the worker is <u>qualified to earn</u> in the worker's job p o o l . [Emphasis added.]

Perryman claims that the term "actual wages" should be interpreted as the claimant's dollar per hour wage extrapolated over a 40 hour work week. He insists the Workers' Compensation Court erred by applying § 39-71-123, MCA (1989), in calculating his pre-injury wages. Perryman claims that while the wage calculation method set out in § 39-71-123, MCA (1989), has been used for calculating pre-injury wages in other types of workers' compensation claims, this Court has never approved its use in a wage supplement claim.

Section 39-71-123(3), MCA (1989), states:

> <u>For compensation benefit purposes,</u> the average <u>actual earnings</u> for the four pay periods immediately preceding the injury are the employee's wages, except if:
>
> (a) the term of employment for the same employer is less than four pay periods, in which case the employee's wages are the hourly rate times the number of hours in a week for which the employee was hired to work; or
>
> (b) for good cause shown by the claimant, the use of the four pay periods does not accurately reflect the claimant's employment history with the employer, in which case the insurer may use additional pay periods. [Emphasis added.]

A wage supplement claim, like any other workers' compensation claim, is a claim for a type of compensation benefits. Since Perryman seeks a form of compensation benefits, § 39-71-123(3), MCA (1989), mandates the use of the four pay period average for calculating his pre-injury wages unless one of the enumerated exceptions is met. Perryman's requested method of calculating his wages is in essence the method provided for in § 39-71-123(3)(a), MCA (1989). However, multiplying a worker's hourly rate by his or her scheduled working hours is only permitted when the worker has been employed at a job for less than four pay periods. Perryman had worked for Blue Range in excess of four pay periods; therefore this method is not available to him.

The other exception to the last four pay period method provided by § 39-71-123, MCA (1989), is if this method "does not accurately reflect the claimant's employment history with the employer." If the four pay period method does not provide an accurate reflection of the employee's wages, additional pay periods can be used. Section 39-71-123(3)(b), MCA (1989). Calculating Perryman's average weekly wages utilizing all his pre-injury pay periods at Blue Range, the Workers' Compensation Court determined his wages to be $388.61 per week. This amounts to approximately five dollars per week less than his average weekly wages during his last four pay periods. Looking at either his entire employment history with Blue Range or his last four pay periods prior to his injury, Perryman worked, on an average, less than 40 hours per

6

week. Thus, the last four pay period method provided in § 39-71-123, MCA (1989), is the appropriate method for calculating Perryman's pre-injury wages.

We conclude that the § 39-71-123, MCA (1989), was the proper method of determining Perryman's pre-injury wages for his wage supplement claim and that the Workers' Compensation Court properly applied § 39-71-123, MCA (1989), in determining his pre-injury wages.

Perry-man also claims that the Workers' Compensation Court assigned him an artificially high post-injury wage, thus further frustrating his wage supplement claim. He argues that the Workers' Compensation Court should take into account all his qualified post-injury employment in calculating his post-injury income. Perryman claims the court erred by relying on State Fund's witness, who testified that he was qualified and able to earn between $12.00 and $16.00 per hour as a heavy equipment operator. Perryman claims that the court should consider his actual post-injury earnings rather than relying on his earning capacity as alleged by State Fund.

As previously stated, § 39-71-703(1)(b)(i), MCA (1989), governs wage supplement benefits. This section states:

(b) The following procedure must be followed for a wage supplement:

(i) A worker must be compensated in weekly benefits equal to 66 2/3% of the difference between the worker's actual wages received at the time of the injury and <u>the wages the worker is qualified to earn in the worker's job</u> pool . . . [Emphasis added.1

7

This section clearly indicates that the wages a worker is qualified to earn, not what he actually earns, will be used to calculate wage supplement benefits.

The Employability Assessment Report on Perryman indicated that he was qualified and physically capable of working as a heavy equipment operator. Perryman likewise admitted at trial that working as a heavy equipment operator was within his post-injury capabilities. State Fund presented evidence that Perryman was qualified and able to earn between $12.00 and $16.00 per hour as a heavy equipment operator. State Fund's witness, Cross, justified the $12.00 to $16.00 per hour figure based on extensive statewide employment data, availability of jobs in this field, and Perryman's previous experience and training as a heavy equipment operator. The Workers' Compensation Court found Cross to be a qualified and credible witness.

The Workers' Compensation Court did not, contrary to Perryman's assertion, assign him the "highest possible" post-injury wage. The evidence established that a heavy equipment operator in Montana could earn approximately $10.00 to $18.00 per hour, depending on his or her training and experience. Cross opined that, based on Perryman's previous training and experience, he was capable of earning between $12.00 and $16.00 per hour.

Also, the Workers' Compensation Court did take into consideration Perryman's actual post-injury wages in qualified employment.

However, the court was not persuaded by this evidence, stating in its findings of fact:

> In reaching its determination, the Court has considered the fact that petitioner is presently earning only $8.00 an hour. However, it does not give great weight to that fact. Since his injury, petitioner has held higher paying jobs. He did not present evidence of a diligent job search for higher paying jobs . . . .

The court properly considered both Perryman's actual post-injury earnings and his potential post-injury earnings.

The Workers' Compensation Court found State Fund's witness to be credible while it found Perryman to be less credible. We will defer judging the credibility and weight of conflicting evidence to the Workers' Compensation Court. Kuenning v. Big Sky of Montana (1988), 231 Mont. 1, 5, 750 P.2d 1091, 1094. We will not substitute our judgment for that of the trial court. Estate of Alcorn (1994), 263 Mont. 353, 360, 868 P.2d 629, 633.

The Workers' Compensation Court found that Perryman did not lose a $12.00 per hour, 40 hour per week job due to his injury. His average weekly earnings at the time of his injury were not $480.00 per week, but were rather $393.75 per week. The latter amount is the proper pre-injury baseline by which Perryman's claim for wage supplement benefits must be calculated. Since the Workers' Compensation Court found that Perryman is capable of earning as much if not more as he was earning at the time of his injury, he is not entitled to wage supplement benefits under § 39-71-703, MCA (1989).

9

We conclude that the Workers' Compensation Court's findings of fact were supported by substantial credible evidence and that its interpretation of §§ 39-71-123 and -703, MCA (1989), were correct. We hold that the court did not err in denying Perryman's claim for wage supplement benefits.

We affirm the decision of the Workers' Compensation Court.

_____
                    Chief Justice

We concur:

_____

_____
            Justices

10

Justice Terry N. Trieweiler specially concurring.

I concur that based on the law we are asked to construe, there was sufficient evidence to support the Workers' Compensation Court's denial of benefits in this case. However, that law is a model of anti-worker bias. The disability statute which pertains to Perryman's claim was described as follows shortly after its enactment:

> In other words, a worker's partial disability benefits under the new benefit provision are now determined by comparing what the worker *actuallyearned* at the time of his injury to some wage that he might theoretically be capable of earning subsequent to his injury. The new law thus uses the most conservative possible standard for pre-injury earning capacity and the most liberal possible standard for post-injury earning capacity. It makes no difference if the worker had been capable of working in heavy industry at $12 an hour and was injured during a temporary lay-off while pumping gas for $3.35 an hour. The fact that the worker is now physically incapable of returning to his former occupation will have no bearing on the rate at which he is paid partial disability benefits.

> To make matters even more unfair, the reduced actual earnings at the time of his injury will be compared to some theoretical earnings in the worker's " job pool" after his injury. It makes no difference that the job is unavailable, that the employer would not hire the worker, or that the job is 500 miles away on the other side of Montana. In determining the pre-injury standard, actual earnings are all that count. However, in determining the post-injury standard against which pre-injury earnings must be compared, the computer and the vocational consultant's imagination are the only limits.

> . . .

> Such a scheme is arbitrary, irrational and, by design, unfair to the worker who has forfeited common-law rights to compensation for what now appears, at best, to be an illusory system of income protection.

> What sense does it make to limit a worker's pre-injury earning capacity to his actual earnings at the

11

time of his injury, but base his post-injury earning capacity on a "job pool" which may have no practical relevance to what he is actually able to earn? In the worst case scenario, the worker's actual earnings at the time of his injury may be atypically low and unrepresentative of what he was actually capable of earning, and his "job pool" may represent no real opportunities for employment. That worker may find himself unable to continue in employment that would previously have paid $30,000 to $40,000 a year, with no realistic alternatives in the present job market, and no disability benefits under Montana's current workers' compensation system. That worker has received nothing of value in exchange for the forfeiture of his common law and constitutional rights to legal redress. If this is the price of improving Montana's economic climate, then the price is too high.

Terry *N*. Trieweiler, *The New Workers' Compensation Act--Somethingfor all Montanans to be Ashamed of,* 50 Mont. L. Rev. 83, 91-93 (1989) (footnote omitted).

Section 39-71-703, MCA (1987), is the result of a concerted effort by recent legislatures to skew the Workers' Compensation Act completely in favor of employers and their insurers, and against those crippled and disabled workers for whose benefit and protection the Act was originally created. It is an example of government by business interest groups at its worst.

It is a reminder that what was once a progressive act for the protection of disabled workers and their families has been reduced to nothing more than a shield against liability for their employers.

Nevertheless, there is no constitutional requirement that the legislature act wisely, fairly, or compassionately. And, so long as the Legislature acts within its constitutional constraints, this Court has no authority to overrule its enactments.

Therefore, I conclude that based on the statutory law with which the Court is presented, the majority has arrived at the correct conclusion, and I reluctantly concur in that conclusion. However, it is with a good deal of regret that I acknowledge this sorry state of affairs for injured workers in Montana.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing concurring opinion.

_____
Justice

13

December 23, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Torger S. Oaas
Attorney at Law
P. 0. Box 76
Lewistown, MT 59457

Charles G. Adams
Legal Counsel
5 South Last Chance Gulch
Helena, MT 59601


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy